677 A.2d 218

MATTER OF ADOPTION OF N.J.A.C. 71I.

TOWNSHIP OF VOORHEES, APPELLANT, v. DEPARTMENT OF ENVIRONMENTAL PROTECTION, ENVIRONMENTAL CLAIMS ADMINISTRATION, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 1, 1996—Decided June 3, 1996.

Before Judges LONG, MUIR, Jr. and LOFTUS.

*Richard M. Hluchan* argued the cause for appellant (*Levin & Hluchan*, attorneys; *Mr. Hluchan*, of counsel; *Terri–Anne Duda* (A–4098–93T2) and *Richard S. Morrison* (A–3860–94T2), on the briefs).

*Eileen P. Kelly*, Deputy Attorney General, argued the cause for respondent (*Deborah T. Poritz*, Attorney General, attorney; *Lawrence E. Stanley* (A–4098–93T2), Assistant Attorney General, and *Mary C. Jacobson* (A–3860–94T2), Assistant Attorney General, of counsel; *Ms. Kelly*, on the briefs).

The opinion of the court was delivered by

MUIR, Jr., J.A.D.

The Sanitary Landfill Facility Closure and Contingency Fund Act (Closure Act), *N.J.S.A.* 13:1E–100 to –116, created a fund to pay for damages resulting from the improper operation or closure of sanitary landfills in New Jersey. Based on the Closure Act provision that recoverable damages include costs related to installation and maintenance of monitoring wells at an improperly closed sanitary landfill, Voorhees Township filed a claim against the Sanitary Landfill Facility Contingency Fund (the fund) for the costs of monitoring wells it had installed pursuant to a Department of Environmental Protection (DEP) consent order. Given that Voorhees, five years prior to the Closure Act, had purchased the site of the monitoring wells, a closed sanitary landfill, and that the Closure Act made owners or operators of sites whereon a sanitary landfill "is or has been located" liable for any damages arising from improper closure, the DEP denied the claim.

In a subsequent adjudicatory hearing, an Administrative Law Judge (ALJ) ruled Voorhees was not an owner within the intend-

ment of the Closure Act. In response, the DEP adopted new regulations to overcome the ALJ ruling along with other regulations directed at Voorhees' claim and the nature of its damage claim. Subsequently, the same ALJ ruled that under the new regulation redefining an owner liable for damages under the Closure Act Voorhees could not recover its damage claim from the fund. The final decision of the DEP Commissioner affirmed on limited grounds.

In these consolidated appeals, Voorhees challenges certain aspects of the newly adopted regulations and at the same time seeks reversal of the Commissioner's final decision. We hold, based on *Vi–Concrete Co. v. State, Department of Environmental Protection,* 115 *N.J.* 1, 556 *A.*2d 761 (1989), that Voorhees is not an owner within the intendment of the Closure Act. In doing so, however, we reject the initial ALJ reasoning which gave rise to the DEP regulation redefining owners liable for damages under the Closure Act. Accordingly, we reverse the Commissioner's final decision. However, due to issues left unresolved by the ALJ in the second proceeding, we remand for further proceedings consonant with this opinion.

## I.

Voorhees Township is the owner of a 37–acre tract of land it purchased in 1977 for nominal consideration to use as a public park. The property from 1959 to 1972 was part of a sanitary landfill that serviced Voorhees' solid waste disposal needs. Voorhees asserts it purchased the property believing the landfill had been closed in accordance with existing law and with no reason to believe there would be environmental concerns in the future.

In October 1986, the DEP unilaterally issued a draft New Jersey Pollutant Discharge Elimination System (NJPDES) permit to Voorhees delineating the need for monitoring wells to be installed and maintained on the former landfill. The DEP, it appears, later issued a final permit only to rescind it based on the holding in *Vi–Concrete Co. v. State, Department of Environmental*

*Protection, supra,* 115 *N.J.* at 3, 4, 556 *A.*2d 761. Issuance of the draft permit was the first notice Voorhees had that the landfill site might have environmental problems. Apparently based on its interest in resolving environmental concerns for the former landfill and prior to the *Vi-Concrete* ruling, Voorhees entered into a DEP consent order in November 1987. The consent order required Voorhees to install and maintain appropriate monitoring wells.

In July 1987, Voorhees filed a claim with the DEP seeking reimbursement for costs incurred in the installation and maintenance of the monitoring wells. Voorhees included related legal fees in its claim. The claim sought recovery of the costs from the fund created by the Closure Act.

The Legislature created the fund as a mechanism for compensating for certain damages incurred as the result of the improper operation or closure of a sanitary landfill. *See N.J.S.A.* 13:1E–101. To that end, the Closure Act provided in part:

13:1E–105. **Sanitary landfill facility contingency fund**

The Sanitary Landfill Facility Contingency Fund (hereinafter referred to as "the fund") is established as a nonlapsing, revolving fund in the Department of Environmental Protection. The fund shall be administered by the department, and shall be credited with all tax revenues collected by the division pursuant to section 5 of this supplementary act. Interest received on moneys in the fund shall be credited to the fund.

13:1E–106. **Strict liability of fund for damages due to operations or closure of sanitary landfill; payment**

a. The fund shall be strictly liable for all direct and indirect damages, no matter by whom sustained, proximately resulting from the operations or closure of any sanitary landfill. These damages shall include, but not be limited to:

. . . .

(4). The costs of the design, construction, installation, operation and maintenance of any device or action deemed necessary by the department to clean up, remedy, mitigate, monitor or analyze any threat to the public health, safety or welfare of the citizens of this State, including the installation and maintenance of methane gas monitors and vents and leachate monitoring wells and collection systems, and the sampling and analysis of any public or private potable water supply.

Voorhees filed the claim because it contended it had suffered damages as the result of being required to install the leachate monitoring wells. (Leachate means a liquid that has been in

contact with solid waste and contains dissolved or suspended materials from the solid waste. *N.J.A.C.* 7:1H–1.4.)

The DEP, through its Environmental Claims Administration, denied the claim. The damage claim denial decision reasoned, "because the [DEP] has an equal and offsetting subrogation claim [under the Closure Act] against [Voorhees, as owner of the landfill,] for all costs [incurred]," the fund was not liable for those costs. The decision relied on certain provisions of the Closure Act that relate to accountability for damages and the replenishing of the fund for any claims paid out. The first of these is *N.J.S.A.* 13:1E–103, which in part provides:

> Every owner or operator of a sanitary landfill facility shall be jointly and severally liable for ... any damages, no matter by whom sustained, proximately resulting from the operations or closure.

The second is *N.J.S.A.* 13:1E–111, which provides:

> Payment of any damages by the fund shall be conditioned upon the department acquiring, by subrogation, all rights of the claimant to recovery of the damages from any owner or operator of a sanitary landfill facility.

The third, *N.J.S.A.* 13:1E–102b, a focus of this appeal, provides:

> "Owner or operator" means and includes, in addition to the usual meanings thereof, every owner of record of any interest in land whereon a sanitary landfill facility is or has been located, and any person or corporation which owns a majority interest in any other corporation which is the owner or operator of any sanitary landfill facility.

The crux of the claim denial was that because Voorhees, as owner of land on which a sanitary landfill facility has been located, is liable for any damages, which include installation and maintenance of leachate monitoring wells, it would make no sense for DEP to reimburse Voorhees the damages for which it is liable only to take a subrogation from Voorhees and then have to bring suit against Voorhees on the subrogation claim.

Voorhees appealed the claim denial and sought an adjudicatory hearing. The ALJ concluded Voorhees was not an owner or operator within the statutory definition and the parallel definition the DEP promulgated in its regulations. Relying on the statutory phrase "is or has been located" under the definition of owner or operator, the ALJ reasoned:

At the time of the landfill's passing by deed it could not have been said: a sanitary landfill facility "is" located on the property. It had been closed years earlier. Neither could it have been said in 1977: a sanitary landfill facility "has been" located on the property. The predicate phrase "has been" denotes the present perfect tense. At oral argument official notice, pursuant to *N.J.A.C.* 1:1–15.2, was taken of the *Webster's New World Dictionary of the American Language,* 2d. College Ed. That dictionary described the "present perfect" as a

1. tense indicating an action or state as completed at the time of speaking but not at any definite time in the past 2. a verb form in this tense (Ex.: has gone)
[*Id.* at p. 1125]

According the words of the Act their plain and unadorned meaning, Voorhees is correct in declaring itself outside the definition of "owner or operator." Otherwise, the legislature would have used the past perfect tense, denoting completion of an action in the past, *e.g. "had* been operated."

Rather than challenge that initial decision, the DEP enacted a series of new regulations, all expressly directed at Voorhees' claim, some of which are the subject of this appeal. Central among the new regulations is *N.J.A.C.* 7:1I–1.5, which expands the statutory definition of "owner or operator" to include "every owner of record of any interest in land whereon a sanitary landfill is located, has been located, had been located or at any time was located."

The new regulations led to a second adjudicatory hearing. This time the initial decision of the ALJ went in favor of the DEP, and Voorhees appealed to the Commissioner. In a decision dated February 15, 1995, the Commissioner adopted "that portion of the ALJ's decision dismissing Voorhees['] claim because it is an 'owner' under the Closure Act.... *N.J.S.A.* 13:1[E]–102(b)."

Voorhees appeals from that Final Decision and from the agency's adoption of the "new regulations (*N.J.A.C.* 7:1I–1, *et seq.* (1994))," in particular *N.J.A.C.* 7:1I–1.2(b), –1.5, and 2.3(b). We conclude that, although the first initial decision of the ALJ is an improper interpretation of the language of *N.J.S.A.* 13:1E–102b (owner or operator definition), *Vi–Concrete* makes it clear that the legislative purpose of the Closure Act is to make the fund, and not Voorhees in this instance, liable for the damages it has incurred. That notwithstanding, Voorhees is not entitled to payment out of the fund for damages allowable under *N.J.A.C.* 7:1I–1.5

and –2.3(b), as recently amended, unless the issues left unresolved before the ALJ in the most recent proceeding are decided in its favor.

## II.

In resolving questions of statutory construction, our judicial function is to effectuate legislative intent. *Jacobitti v. Jacobitti*, 135 *N.J.* 571, 579, 641 *A.*2d 535 (1994); *State v. Sutton*, 132 *N.J.* 471, 479, 625 *A.*2d 1132 (1993). Normally, the plain language of the statute is controlling. *See State v. Sutton, supra,* 132 *N.J.* at 479, 625 *A.*2d 1132. Where, however, the plain language fosters more than one possible meaning, we are instructed to "effectuate the legislative intent in light of the language used and the objects sought to be achieved." *Merin v. Maglaki,* 126 *N.J.* 430, 435, 599 *A.*2d 1256 (1992) (quoting *State v. Maguire,* 84 *N.J.* 508, 514, 423 *A.*2d 294 (1980)). In search of that intent, we may turn to the statute's structure, history, and purpose. *Fiore v. Consolidated Freightways,* 140 *N.J.* 452, 471, 659 *A.*2d 436 (1995). Moreover, statutes should not be interpreted in a manner leading to an absurd result and every effort should be exerted to avoid such a result. *State v. Tekel,* 281 *N.J.Super.* 502, 506, 658 *A.*2d 1281 (App.Div.1995).

To begin with, we conclude the plain language of that portion of *N.J.S.A.* 13:1E–102b that reads " '[o]wner or operator' means ... every owner of ... land whereon a sanitary landfill facility ... has been located" literally applies to Voorhees in this instance. Contrary to the ALJ's first decision, the verb tense did not require the use of the word "had" in place of "has" for Voorhees to be an owner under the Closure Act. Grammatically, "has been located" is the present perfect tense, which expresses an action completed by the present time, although when it was completed is not determined. *See Webster's Third New International Dictionary of the English Language* 1794 (1993). In that context, Voorhees is the owner of land within the statute's parameters. The sanitary landfill operated from 1959 to 1972 and then

closed. When purchased by Voorhees, the site constituted one on which a landfill has been located. The plain language can have no other sensible construction. Consequently, we need not review the validity of *N.J.A.C.* 7:11–1.5.

That, however, does not resolve the issue of Voorhees' liability as an owner of land upon which a sanitary landfill has been located. The statutory language fosters more than one possible meaning. It can be read to mean that an owner of land upon which a sanitary landfill has been located who improperly closed the landfill is liable for statutory damages. On the other hand, it can be read to mean, as the DEP seems to contend, that no matter how long ago the landfill was closed and no matter how long before the enactment of the Closure Act an owner acquired the former landfill site and regardless of how long after closure the owner acquired the site, the owner is liable for statutory damages. We conclude the latter interpretation leads to an absurd result. We are persuaded the statutory intent is not to impose liability on Voorhees.

By making the owner or operator liable for statutory damages, the Closure Act reflects a goal to subject to statutory damages those persons or corporations that benefitted from the operation of the sanitary landfill. Unquestionably, the Closure Act recognizes that an operating landfill can have a person or business entity as operator while at that same time it can have another person or business entity as the owner of the land. Given the corporate layering and leasing practices in modern day business, land leases beneficial to both a landlord-owner and tenant-operator are common. By making an owner and an operator liable for damages, the Closure Act precludes an owner, who owned at the time of the landfill operation and who retains a closed sanitary landfill site or transfers ownership to an overlapping corporate entity (*see N.J.S.A.* 13:1E–102b), from avoiding responsibility for improper closure years after that closure. The legislative objective then is to impose responsibility upon an owner who enabled the improper closure to occur. The legislation,

however, does not suggest that any person who acquired title to a closed sanitary landfill prior to enactment of the Closure Act should be liable for statutory damages.

The Supreme Court's analysis of the Closure Act in *Vi–Concrete* supports our conclusion. Vi–Concrete's circumstances were analogous to those of Voorhees. There, the DEP unilaterally issued a NJPDES permit to Vi–Concrete directing installation and maintenance of leachate monitoring wells. Vi–Concrete owned lands which it purchased in 1976. The land had been a sanitary landfill until it closed in 1968. When Vi–Concrete purchased the site, it had no indication that a landfill ever existed on the property. *See Vi–Concrete Co. v. State, Dep't of Envtl. Protection, supra,* 115 *N.J.* at 3, 556 *A.*2d 761, and the Appellate Division statement of facts in the same case, 220 *N.J.Super.* 176, 179, 531 *A.*2d 1039 (App.Div.1987).

We note the DEP contends Voorhees' knowledge the site had been a sanitary landfill and its use of the site prior to closure are facts which make *Vi–Concrete*'s holding inapplicable here. We disagree. We do not view those facts sufficient to bring Voorhees within the intendment of the Closure Act despite DEP's new regulations to the contrary.

The Supreme Court in *Vi–Concrete* invalidated the NJPDES permit. The Court ruled:

> We hold that the [Water Pollution Control Act, *N.J.S.A.* 58:10A–1 to –20] does not categorically impose on the owners of all closed landfills the duty to install and maintain monitoring wells on their property.... Moreover, we find clear legislative authority to enable DEP for good cause to install and maintain monitoring wells on petitioner's property, using funds available pursuant to the [Closure Act].
>
> [*Vi-Concrete Co. v. State, Dep't of Envtl. Protection, supra,* 115 *N.J.* at 3–4, 556 *A.*2d 761.]

The Court concluded its ruling on the permit was "reinforced by the [Closure Act] and its implementing regulations." *Id.* at 13, 556 *A.*2d 761. As part of its reinforcement reasoning, the Court stated:

> To the extent that DEP determines that monitoring wells are required to be installed and maintained on landfill sites closed prior to January 1982, the Fund

established by the Closure Act is clearly authorized to pay the costs of such installation and maintenance. Presumably, the "claimant" for purposes of the Closure Act would be the current property owner, from whom DEP would acquire subrogation rights against the owner or operator of the landfill. *N.J.S.A.* 13:1E–111. We assume that present owners of closed landfill sites would readily consent to DEP's installation and maintenance of leachate monitoring wells on their property if the cost is borne by the Sanitary Landfill Facility Contingency Fund.

[*Id.* at 15, 556 *A.*2d 761 (footnote omitted).]

█ Voorhees consented to the installation and maintenance of leachate monitoring wells on its property. It assumed the obligation to do the work and provide the funding for the work. Given *Vi–Concrete*'s almost identical facts, we conclude its reasoning applies, and Voorhees is not barred from applying for statutory damages. Finally, we find without merit Voorhees' challenge to *N.J.A.C.* 2:11–2.3(b).

The DEP Commissioner's final decision is reversed. The matter is remanded to the DEP for further proceedings consonant with this opinion. We do not retain jurisdiction.