840 A.2d 850

IN THE MATTER OF REGISTRANT L.E.

IN THE MATTER OF REGISTRANT R.O.

Superior Court of New Jersey
Appellate Division

Submitted October 10, 2003—Decided November 19, 2003.

Before Judges ANTELL, BILDER and LANDAU.

The opinion of the court was delivered by

ANTELL, P.J.A.D. (retired and temporarily assigned on recall).

The question before us is whether or not under present state and federal legislation Megan's Law registrants who committed certain sex offenses when they were under the age of fourteen years are eligible for termination of their registration obligation when they become eighteen. The pertinent legislative expressions are found in the New Jersey Registration and Community Notification Law (Megan's Law), *N.J.S.A.* 2C:7–1 to 11, and the federal Jacob Wetterling Act, 42 *U.S.C.A.* § 14071.

L.E. was adjudicated delinquent in 1998 for an offense which, if committed by an adult, would constitute the crime of sexual assault, *N.J.S.A.* 2C:14–2c(1). He was sentenced to three years probation and is now classified under Megan's Law as a Tier I low risk offender with a registrant risk assessment score (RRAS) of 35. He was twelve years old at the time of his offense.

R.O. was adjudicated delinquent in 1997 also of an offense which, if committed by an adult, would constitute the crime of sexual assault, *N.J.S.A.* 2C:14–2c(1). He was thirteen years old at

the time of the offense and was sentenced to two years probation. He too is classified as a Tier I low risk sex offender with an RRAS of 29.

Both registrants have reached the age of eighteen years. They appeal from orders of the Law Division dated June 19, 2003, denying their motions to be relieved entirely of their obligations under Megan's Law.

Registrants argue that pursuant to *In The Matter of Registrant J.G.,* 169 *N.J.* 304, 777 *A.*2d 891 (2001), they are entitled to have their Megan's Law status terminated because they were under the age of fourteen when their sex offenses were committed and are now over eighteen.

Under Megan's Law, as originally enacted, "a person required to register under this act" could apply to the Superior Court for termination of his or her obligation "upon proof that the person has not committed an offense within fifteen years following conviction or release from a correctional facility for any term of imprisonment imposed, whichever is later, and is not likely to pose a threat to the safety of others." *N.J.S.A.* 2C:7–2f.

However, in *J.G.,* the Supreme Court considered the effect of this long-term registration obligation on juveniles and undertook to "harmonize Megan's Law and the Juvenile Code in the manner that in our view best reflects the legislative objective underlying both statutes." *J.G., supra,* 169 *N.J.* at 337, 777 *A.*2d at 912. It concluded in the following language that the long-term registration requirements of Megan's Law did not apply to registrants whose acts of juvenile delinquency took place when they were less than fourteen years of age and that they could apply for termination at age eighteen:

Although we acknowledge that registration and community notification do not constitute dispositions pursuant to the Juvenile Code, we hold, consistent with the purpose underlying *N.J.S.A.* 2A:4A–47(a), that with respect to juveniles adjudicated delinquent for sexual offenses committed when they were under age fourteen Megan's Law registration and community notification orders shall terminate at age eighteen if the Law Division, after a hearing held on motion of the adjudicated delinquent, determines on the basis of clear and convincing evidence that the delinquent is not likely to pose a threat to the safety of others. We import that

standard, but with a higher burden of proof, from *N.J.S.A.* 2C:7–2, the provision of Megan's Law that authorizes the termination of registration obligations of persons who have not committed a sex offense within fifteen years of conviction or release from a correctional facility, whichever is later. Eligible delinquents unable to satisfy that high standard of proof will continue to be subject to the registration and notification provisions of Megan's Law. But with respect to those adjudicated delinquents whose proofs meet that standard, and whose youthfulness at the time of the offense rendered uncertain his or her criminal capacity and future dangerousness, we believe our holding is faithful to the rehabilitative goals of the Juvenile Code without undermining the salutary objectives of Megan's Law.

[169 *N.J.* at 337, 777 *A.*2d at 912].

The trial court, in both matters, stated it was satisfied by clear and convincing evidence that the registrants had satisfied all the *J.G.* criteria and would have granted the requested relief were it not for recent amendments to Megan's Law. Approximately six months after publication of *J.G., N.J.S.A.* 2C:7–2f was amended to condition a registrant's right to apply for termination after fifteen years only if the application was compatible with the simultaneously enacted "subsection g" to *N.J.S.A.* 2C:7–2. Subsection g states the following:

*A person required to register under this section who has been* convicted of, *adjudicated delinquent,* or acquitted by reason of insanity for more than one sex offense as defined in subsection b. of this section or who has been convicted of, *adjudicated delinquent* or acquitted by reason of insanity *for aggravated sexual assault* pursuant to subsection a. of *N.J.S.* 2C:14–2 or sexual assault pursuant to paragraph (1) of subsection c. of *N.J.S.* 2C:14–2 is not eligible under subsection f. of this section to make application to the Superior Court of this State to terminate the registration obligation.

[Emphasis added]

Because both registrants had been adjudicated delinquent for commission of the crimes specified by subsection g the trial court decided that the legislative will overrode the decision of the Supreme Court in *J.G.* We disagree with that conclusion.

Subsection g was not intended to alter the import of *J.G.* In deciding that registrants who committed sex offenses when they were less than fourteen could apply for termination when they reached eighteen, the Supreme Court carved out from the class of "person[s] required to register under this section who ... [have] ... been ... adjudicated delinquent ...", etc., a clearly defined group, *i.e.,* "juveniles adjudicated delinquent for sexual offenses

committed when they were under age fourteen," *J.G.*, *supra* at 337, 777 A.2d at 912. By using in subsection g the very same statutory language thus interpreted by the Supreme Court, the Legislature presumably ratified *J.G.* and affirmed that the amendment did not extend to offenders under fourteen. The governing principles of statutory interpretation were stated by Justice Long in *Coyle v. Bd. of Chosen Freeholders*, 170 *N.J.* 260, 267, 787 A.2d 881, 886 (2002), in the following language:

> There is a long-standing canon of statutory construction that presumes that the Legislature is knowledgeable regarding the judicial interpretation of its enactments. *State v. Burford*, 163 *N.J.* 16, 20, 746 A.2d 998 (2000). When a statute has received "contemporaneous and practical interpretation," and the statute is thereafter amended without any change in the interpreted language, the judicial construction "is regarded as presumptively the correct interpretation of the law." *Ford Motor Co. v. New Jersey Dept. of Labor & Indus.*, 7 *N.J.Super.* 30, 38, 71 A.2d 727 (App.Div.) (citing 2 Sutherland, *Statutory Construction*, § 5109 (3d ed. 1943)), *aff'd*, 5 *N.J.* 494, 76 A.2d 256 (1950); *see also Lemke v. Bailey*, 41 *N.J.* 295, 301, 196 A.2d 523 (1963); *Harper v. New Jersey Mfrs. Cas. Ins. Co.*, 1 *N.J.* 93, 98–99, 62 A.2d 135 (1948). Moreover, courts will not impute a legislative intention to alter an established judicial interpretation absent a "clear manifestation" of such intent. *State v. Dalglish*, 86 *N.J.* 503, 512, 432 A.2d 74 (1981). Those presumptions and rules of statutory construction apply equally to the judicial construction of judicially adopted rules. *State v. Vigilante*, 194 *N.J.Super.* 560, 563, 477 A.2d 429 (Law Div.1983) (citing *Diodato v. Camden County Park Comm'n.*, 136 *N.J.Super.* 324, 327, 346 A.2d 100 (App.Div.1975)).

The absence of any specification in subsection g that the class of persons the Supreme Court singled out in *J.G.* was also to be covered by the amendment evidences that the Legislature intended to leave the Court's ruling intact. Thus, under settled principles of statutory construction, those whose offenses were committed when they were less than fourteen continue to be eligible for termination when they reach eighteen. This is subject, of course, to the condition that the offender be found by clear and convincing evidence "not likely to pose a threat to the safety of others."

The purpose of the amendment is made plain in the following language of the legislative statement accompanying the bill:

> Under current State law, a sex offender who has not committed a repeat offense for at least fifteen years may petition a judge to remove his name from the

registry. The federal Megan's Law provision in the Jacob Wetterling Act, however, prohibits twice convicted sex offenders or violent sex offenders with one conviction from being released from the requirement to register. *States that do not comply with this requirement will lose federal funding beginning in the year 2002.*

[Senate Law and Public Safety Committee Statement to Senate No. 2714 - L. 2001, c. 392.] [Emphasis added.]

The Jacob Wetterling Act referred to in the committee statement appears at 42 *U.S.C.A.* § 14071. It directs the federal Attorney General to establish guidelines for state programs such as Megan's Law that require the registration of persons guilty of offenses of the kind committed by the registrants herein and prescribes the length of time for which offenders must remain registered. 42 *U.S.C.A.* § 14071(a)(1). For the offenses of which registrants were found guilty, they would be obliged to remain registered for the rest of their lives. *Id.* at § 14071(b)(6)(B)(ii). States that fail to implement the Jacob Wetterling Program are to be denied, under 42 *U.S.C.A.* § 14071(g)(2), ten percent of certain funding that would otherwise be allocated to the States under 42 *U.S.C.A.* § 3756.

In the final guidelines issued by the Department of Justice, the Attorney General stated the following:

Juvenile delinquents and offenders. The Act's registration requirements depend in all circumstances on conviction of certain types of offenses. Hence, *states are not required to mandate registration for juveniles who are adjudicated delinquent—as opposed to adults convicted of crimes and juveniles convicted as adults—even if the conduct on which the juvenile delinquency adjudication is based would constitute an offense giving rise to a registration requirement if engaged in by an adult.* However, nothing in the Act prohibits states from requiring registration for juvenile delinquents, and the conviction of a juvenile who is prosecuted as an adult does count as a conviction for purposes of the Act's registration requirements.

[Final Guidelines for the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 64 Fed. Reg. 572, 578 (Jan. 5, 1999)]. [Emphasis added.]

Although New Jersey has exercised the option provided by the foregoing guidelines to require registration for juvenile delinquents, it has chosen to do so only within the limitations of *J.G.*, a

determination which was clearly permissible under the Attorney General's guidelines.

▮ The trial court denied registrants' application to be terminated from the Megan's Law requirements only because it felt that subsection g dictated otherwise. It was satisfied by clear and convincing evidence that they were "not likely to pose a threat to the safety of others." Hence, it will not be necessary to remand for resolution of that issue. The orders are therefore remanded to the Law Division only for the execution and filing of an order granting the relief requested.

LANDAU, J.A.D., (concurring).

I concur with the majority opinion. As my colleagues properly observe, the Legislature added Subsection (g) to *N.J.S.A.* 2C:7–2 with an expressed purpose of insuring compliance with the requirements of the federal Jacob Wetterling Act, 42 *U.S.C.A.* § 14071. Subsection (a)(1) of that Act directs the Attorney General of the United States to establish guidelines for State programs that require [inter alia]—

(A) a person who is convicted of a criminal offense against a victim who is a minor or who is convicted of a sexually violent offense to register a current address for the time period specified in subparagraph (A) of subsection (b)(6) of this section:
. . .

Compliance with the guidelines is necessary in order to avoid loss of substantial federal funding, 42 *U.S.C.A.* 14071(g)(2)(A).

The relevant excerpt from the Attorney General's Guidelines is quoted in the majority opinion. Those guidelines, promulgated in January 1999, provide that states are not mandated to require registration for juveniles who are adjudicated delinquents, even if the conduct on which the adjudication is based would give rise to a registration requirement if engaged in by an adult.

I believe it necessary to clarify that, in light of the express purpose for legislative enactment of *N.J.S.A.* 2C:7–2(g), the present opinion is correct because it does not conflict with the existing federal guidelines.

My concern arises because the "Definitions" section of the Wetterling Act, 42 *U.S.C.A.* § 14071(a)(3), designates the kind of offenses against minors for which the Attorney General is required to establish guidelines. Subparagraph (A) defines a "criminal offense against a victim who is a minor," to include, inter alia, criminal sexual conduct toward a minor; solicitation of a minor to engage in sexual conduct; and any conduct that by its nature is a sexual offense against a minor. Subparagraph (B) defines the term "sexually violent offense" to include aggravated sexual abuse or sexual abuse. Subparagraphs (A) and (B) are set forth below.[1]

For the purposes of subparagraph (A), perpetrators eighteen years of age or younger are excluded from being considered as having committed a criminal offense when their conduct "is crimi-

---

[1] For purposes of this section:

(A) The term "criminal offense against a victim who is a minor" means any criminal offense in a range of offenses specified by State law which is comparable to or which exceeds the following range of offenses:

(i) kidnapping of a minor, except by a parent;

(ii) false imprisonment of a minor, except by a parent;

(iii) criminal sexual conduct toward a minor;

(iv) solicitation of a minor to engage in sexual conduct;

(v) use of a minor in a sexual performance;

(vi) solicitation of a minor to practice prostitution;

(vii) any conduct that by its nature is a sexual offense against a minor; or

(viii) an attempt to commit an offense described in any of clauses (i) through (vii), if the State—

(I) makes such an attempt a criminal offense; and

(II) chooses to include such an offense in those which are criminal offenses against a victim who is a minor for the purposes of this section.

For purposes of this subparagraph conduct which is criminal only because of the age of the victim shall not be considered a criminal offense if the perpetrator is 18 years of age or younger.

(B) The term "sexually violent offense" means any criminal offense in a range of offenses specified by State law which is comparable to or which exceeds the range of offenses encompassed by aggravated sexual abuse (as described in sections 2241 and 2242 of Title 18 or as described in the State criminal code) or an offense that has as its elements engaging in physical contact with another person with intent to commit aggravated sexual abuse or sexual abuse (as described in such sections of Title 18 or as described in the State criminal code).

nal *only because of the age of the victim.*" (Emphasis provided.) Moreover, the definition of a "sexually violent offense" in subparagraph (B) contains no such exception directed at the perpetrator's age. In the cases of both L.E. and R.O., their offenses, if committed by an adult, would have constituted the crime of second degree sexual assault involving an act of sexual penetration with the use of physical force or coercion. *N.J.S.A.* 2C:14–2c(1).

I wish to imply no discontent with the present Wetterling guidelines. Indeed, I applaud their policy. The language of the underlying statute, however, causes me to raise the qualifying observation that our opinion should be deemed controlling for future juvenile registrants only so long as those guidelines remain consistent.