**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2388-16T1
A-3132-16T1

IN THE MATTER OF REGISTRANT G.H.

_____

IN THE MATTER OF REGISTRANT G.A.

_____

> **APPROVED FOR PUBLICATION**
>
> **August 6, 2018**
>
> **APPELLATE DIVISION**

Argued May 21, 2018 — Decided August 6, 2018

Before Judges Messano, Accurso, and O'Connor.

On appeal from Superior Court of New Jersey, Law Division, Union County and Middlesex County, Docket Nos. ML-00200521 and ML-07130018.

Stephanie A. Lutz, Assistant Deputy Public Defender, argued the cause for appellants G.H. and G.A. (Joseph E. Krakora, Public Defender, attorney; Stefan J. Erwin, Assistant Deputy Public Defender, of counsel; Stephanie A. Lutz, of counsel and on the briefs).

Emily R. Anderson, Deputy Attorney General, argued the cause for respondent State of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Emily R. Anderson, of counsel and on the briefs).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

We consolidated these appeals to issue a single opinion because they present the same legal issue. G.H. and G.A. were

convicted of sexual offenses, see N.J.S.A. 2C:7-2(b), prior to 2002, when the Legislature amended the registration provisions of Megan's Law, N.J.S.A. 2C:7-1 to -23, by enacting a new subsection, N.J.S.A. 2C:7-2(g) (subsection (g)), see L. 2001, c. 392. Subsection (g) provides in relevant part:

> A person required to register under this section who has been convicted of . . . more than one sex offense . . . or who has been convicted of . . . aggravated sexual assault pursuant to [N.J.S.A. 2C:14-2(a)] or sexual assault pursuant to [N.J.S.A. 2C:14-2(c)(1)] is not eligible . . . to make application to the Superior Court of this State to terminate the registration obligation.
>
> [(Emphasis added).]

Subsection (g) took "effect immediately" on January 8, 2002. L. 2001, c. 392, § 2. As a result, the lifetime registration requirements of Megan's Law became "permanent[ and] irrevocable" for certain offenders. In re State ex rel. C.K., 233 N.J. 44, 66 (2018).

Neither G.H. nor G.A. has committed an offense for more than fifteen years since his release from custody. Prior to the adoption of subsection (g), both would have been eligible for relief from lifetime registration pursuant to N.J.S.A. 2C:7-2(f) (subsection (f)), which provides any registrant may

> make application to the Superior Court . . . to terminate the obligation upon proof that the person has not committed an offense within 15 years following conviction or

> release from a correctional facility for any term of imprisonment imposed, whichever is later, and is not likely to pose a threat to the safety of others.
>
> [Ibid.]

However, because G.H. was convicted of more than one sexual offense, and both G.H. and G.A. were convicted of offenses listed in subsection (g), the respective trial courts denied their requests to terminate registration obligations.

G.H. and G.A. argue the Legislature did not intend "subsection (g) to apply retroactively" to convictions that predated its passage, and, "[r]egardless of legislative intent," retroactive application would result in "manifest injustice and interference with vested rights." The State contends G.H. and G.A. were not eligible for and did not seek relief under subsection (f) until after the Legislature enacted subsection (g), and therefore the trial courts did not apply subsection (g) retroactively. Alternatively, the State contends the Legislature intended subsection (g) to apply retroactively to registrants like G.H. and G.A.

I.

In Doe v. Poritz, 142 N.J. 1, 12-13 (1995), the Court upheld the constitutionality of the registration and community notification provisions of Megan's Law, first enacted in 1994. As the Court noted, the registration obligations mandated by

N.J.S.A. 2C:7-2 are significant and trigger additional consequences, notably potential criminal liability for failing to register. Id. at 21-22; see N.J.S.A. 2C:7-2(a)(3) (making it a third-degree crime for failing to register).[1] The notification provisions require community-wide dissemination of the location of a sex offender's residence. N.J.S.A. 2C:7-6 to -10 (requiring public notification of a sex offender's residence upon "release to the community"). The Doe Court concluded the legislation was "clearly and totally remedial in purpose" and "designed simply and solely to enable the public to protect itself from the danger posed by sex offenders." Doe, 142 N.J. at 73.

Although the law imposed these "lifetime requirements" on every defendant when convicted, id. at 21, subsection (f) provided potential relief. "The underlying assumption of [subsection (f)] [was] that when a registrant, who has been offense-free for fifteen or more years, no longer poses a risk to the safety of the public, keeping him bound to the registration requirements no longer serves a remedial purpose." C.K., 233 N.J. at 64.

---

[1] The Legislature increased the penalty for failing to register from a fourth-degree to a third-degree crime in 2007. L. 2007, c. 19.

Subsection (g) was enacted to comply with 1996 amendments to the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act of 1994 (Wetterling Act), Pub. L. No. 104-236, §§ 3-7, 110 Stat. 3096, 3097 (repealed 2006), and ensure continued federal funds for New Jersey. C.K., 233 N.J. at 61; In re L.E., 366 N.J. Super. 61, 65-66 (App. Div. 2003). The Wetterling Act "direct[ed] the federal Attorney General to establish guidelines for state programs such as Megan's Law that require the registration of persons guilty of offenses of the kind committed by the registrants herein and prescribes the length of time for which offenders must remain registered." L.E., 366 N.J. Super. at 66 (citing 42 U.S.C. § 14071(a)(1)) (repealed by U.S.C. §§ 16901-91). "As a result of the Wetterling Act . . . all fifty states and the District of Columbia ha[ve] both sex offender registration systems and community notification programs." United States v. Begay, 622 F.3d 1187, 1190 (9th Cir. 2010).

Congress has since repealed the Wetterling Act and replaced it with the Adam Walsh Child Protection and Safety Act. C.K., 233 N.J. at 61 (citing Pub. L. No. 109-248, 120 Stat. 587 (codified at 42 U.S.C. §§ 16901-91 (repealing 42 U.S.C. §§ 14071-73))). Title I of that act, the Sex Offender Registration and Notification Act (SORNA), "establishe[d] a national baseline

for sex offender registration and requires that states receiving federal crime funds substantially comply with the guidelines it outlines." Ibid. (citing 34 U.S.C. § 20927; 34 U.S.C. § 10151). "[M]ost states, including New Jersey, have not substantially implemented SORNA." Id. at 61-62 (citation omitted).

In C.K., 233 N.J. at 76, the Court concluded subsection (g) violated the due process rights of juveniles, imposing "continued constraints on their lives and liberty . . . long after they have become adults," thereby transcending the remedial purpose of Megan's Law and "tak[ing] on a punitive aspect that cannot be justified by our Constitution." The Court was not required to and did not address whether irrevocable lifetime registration pursuant to subsection (g) applied to a registrant — adult or juvenile — who committed his offense prior to subsection (g)'s effective date. See id. at 50 (explaining C.K. was adjudicated delinquent in 2003).

The Violent Predator Incapacitation Act (VPIA) was enacted as a "component" of Megan's Law at the time of its passage in 1994. State v. Schubert, 212 N.J. 295, 305 (2012). The VPIA specifically required that a court impose a "special sentence of community supervision for life" (CSL) on all defendants convicted of certain offenses. N.J.S.A. 2C:43-6.4(a). The

Legislature subsequently amended the statute, replacing CSL with parole supervision for life (PSL).  L. 2003, c. 267, § 1.  The amendment was more than "a simple change in nomenclature," State v. Perez, 220 N.J. 423, 441 (2015), and significantly increased penal consequences for violations of the conditions of supervision.  See State v. Hester, ___ N.J. ___, ___ (2018) (slip op. at 7-9) (explaining the differences between CSL and PSL and the consequences of those differences).

However, despite these legislative changes, one provision of the VPIA that "mirrors [subsection (f)]," In re J.S., 444 N.J. Super. 303, 312 (App. Div.), certif. denied, 225 N.J. 339 (2016), has remained constant.  Pursuant to N.J.S.A. 2C:43-6.4(c), an offender who has not committed a crime for fifteen years since his last conviction or release, and who no longer poses a threat to public safety, "may petition the Superior Court for release from . . . supervision."

Thus, the Legislature's decision to retain N.J.S.A. 2C:43-6.4(c) results in the anomalous situation of permitting some registrants, who have clearly and convincingly demonstrated their successful rehabilitation, relief from the onerous conditions of lifetime supervision, see N.J.A.C. 10A:71-6.11(b); Schubert, 212 N.J. at 307 (noting "significant restrictions . . . attendant to [CSL]"), yet at the same time

foreclosing them any relief from lifetime registration and community notification. In re J.M., 440 N.J. Super. 107, 116-17 (Law Div. 2014).

## II.

G.H. pled guilty in 1996 to three counts of second-degree sexual assault, N.J.S.A. 2C:14-2b and -2(c)(5), and one count of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2a(2)(b). The offenses were committed on different dates with different minor victims. The judge sentenced G.H. in 1997 to concurrent eight-year terms in the Adult Diagnostic & Treatment Center and CSL; G.H. was paroled in 2000.

In February 2016, G.H. moved under subsection (f) for relief from his registration obligations and termination of CSL. He certified that since his release, he became gainfully employed, married, had two children and remained offense free. G.H. also certified that prior to entering his guilty pleas, based upon discussions with trial counsel, he had a reasonable expectation he could obtain relief from lifetime registration if he "remained offense free for fifteen years". G.H. attached several professional evaluations that generally concluded he presented no threat to public safety and was unlikely to recidivate.

In an oral opinion following argument, the judge concluded G.H. had been convicted of more than one sexual offense, including a conviction for aggravated sexual assault. As a result, G.H. was ineligible for relief from registration under subsection (g). However, the judge also concluded that G.H. had "met his burden for termination of CSL obligations." The judge entered a conforming order on January 18, 2017, and this appeal followed.

In 2001, G.A. pled guilty to an accusation alleging he committed an act of sexual penetration by "using force or coercion," i.e., second-degree sexual assault, N.J.S.A. 2C:14-2(c).[2] The judge imposed a two-year probationary term, with a condition that G.A. serve 364 days in the county jail, CSL and registration under Megan's Law.

After fifteen offense-free years, G.A. sought relief from registration under subsection (f) and termination of CSL. In support of his motion, G.A. furnished a report of a recent psychological evaluation, which stated G.A. was "not likely to commit another sexual offense and d[id] not present a risk of harm to others in the community."

---

[2] Before the Law Division judge, G.A. asserted that the offense was not one listed in subsection (g). Although the transcript of G.A.'s guilty plea was unavailable, the judge found G.A. pled guilty to N.J.S.A. 2C:14-2(c)(1), a crime listed in subsection (g). G.A. does not challenge this finding on appeal.

In December 2016, the judge granted G.A.'s motion to terminate CSL. However, in a comprehensive written opinion, the judge denied G.A. relief from the registration requirements of Megan's Law. She reasoned that subsection (g) was "curative in nature," and its retroactive application did not result in a manifest injustice. The judge entered a conforming order on March 6, 2017, and this appeal followed.

### III.

The issue before us is a question of law which we decide de novo. State v. Revie, 220 N.J. 126, 132 (2014). Appellants concede that retroactive application of subsection (g) does not violate federal or state constitutional prohibitions against ex post facto laws. U.S. Const. art. I, § 10, cl. 1; N.J. Const. art. IV, § 7, ¶ 3.[3]  Rather, they argue general rules of

---

[3] We assume appellants chose not to argue subsection (g) violates ex post facto prohibitions because the Doe Court concluded the registration requirements, as enacted in 1994, which notably permitted relief under subsection (f), were remedial and not punitive. 142 N.J. at 40-75. Indeed, "[t]he majority of state courts . . . have found that retroactive application of their respective sex offender registries to offenders with convictions that pre-date the statute's enactment is not punitive and/or does not violate the prohibition against ex post facto laws." Starkey v. Okla. Dep't of Corr., 305 P.3d 1004, 1037-39 n.10 (Okla. 2013) (Winchester, J., dissenting) (outlining state decisions regarding retroactive application of sex offender registration and notification statutes).

However, there is some disagreement among our sister states who have considered the specific issue of whether subsequent
(continued)

statutory construction make clear that the Legislature never intended subsection (g) should apply to registrants sentenced before its enactment, or, alternatively, regardless of legislative intent, retroactive application of section (g) results in a manifest injustice that interferes with registrants' vested rights to relief.

"The primary goal of statutory interpretation is to determine as best [as possible] the intent of the Legislature,

---

(continued)
amendments to an otherwise constitutional registration scheme that retroactively increase the time of required registration, eliminate potential relief from registration or otherwise impose additional burdens, violate ex post facto prohibitions. Compare Commonwealth v. Baker, 295 S.W.3d 437 (Ky. 2009) (residency restriction too punitive when applied retroactively), State v. Letalien, 985 A.2d 4 (Me. 2009) (retroactive application of lifetime registration violated ex post facto clause), Doe v. State, 111 A.3d 1077 (N.H. 2015) (concluding aggregate effects of amendments to previously constitutional regulatory scheme, in particular lifetime registration without review, made the legislation punitive), State v. Williams, 952 N.E.2d 1108 (Ohio 2011) (amendment that increased length of registration period violated state ex post facto prohibition when applied to a defendant who committed the crime before effective date of amendment), and Starkey, 305 P.3d 1004 (Okla. 2013) (finding retroactive application of lifetime registration was punitive and violated ex post facto clause), with Lemmon v. Harris, 949 N.E.2d 803 (Ind. 2011) (amendment to registry imposing lifetime requirements for "sexually violent predators" does not violate the ex post facto clause), and State v. Rocheleau, 415 P.3d 422 (Kan. 2018) (retroactive application of amendment that increased registration from ten years to lifetime registration did not violate ex post facto clause).
        Because the issue is not before us, we do not consider whether the retroactive application of subsection (g) violates the ex post facto clauses of either the United States or New Jersey Constitutions.

and to give effect to that intent." In re N.B., 222 N.J. 87, 98 (2015) (alteration in original) (quoting State v. Lenihan, 219 N.J. 251, 262 (2014)). "The intent of the Legislature 'begins with the language of the statute, and the words chosen by the Legislature should be accorded their ordinary and accustomed meaning.'" Lenihan, 219 N.J. at 262 (quoting State v. Hudson, 209 N.J. 513, 529 (2012)). "[I]f a statute's plain language is ambiguous or subject to multiple interpretations, the Court 'may consider extrinsic evidence including legislative history and committee reports.'" State v. Frye, 217 N.J. 566, 575 (2014) (quoting State v. Marquez, 202 N.J. 485, 500 (2010)).

A.

Initially, we dispense with the State's argument that the trial courts did not give subsection (g) retroactive effect because neither G.H. nor G.A. were eligible for termination of their registration obligations until after the Legislature adopted the provision in 2002. According to the State, "[t]he important date for analysis is the date the registrant applied to terminate . . . his or her obligations under Megan's Law, not the date of his or her conviction."

In Hester, slip op. at 5, the defendants were sentenced to CSL prior to a 2014 amendment to the VPIA that increased

punishment for violations of CSL.[4]  They were indicted after the effective date of the amendment for violating general conditions of their CSL.  Id. at 9.  The trial judges dismissed the indictments as violating the Ex Post Facto Clauses of the state and federal constitutions.  Id. at 10.

On appeal, we held that "the 2014 Amendment retroactively increased defendants' punishment for a CSL violation by elevating the penalty from a fourth-degree to a third-degree crime and by mandating the imposition of PSL."  Id. at 10-11 (citing State v. Hester, 449 N.J. Super. 314, 318 (App. Div. 2017)).  We "rejected the State's argument that the Amendment did not increase the punishment for defendants' pre-2014 sex offenses but rather punished the commission of new crimes -- the CSL violations."  Id. at 11 (citing Hester, 449 N.J. Super. at 328-31).

The Court agreed.  Id. at 14, 22.  Justice Albin reasoned, "a law that retroactively 'imposes additional punishment to an already completed crime' disadvantages a defendant, and therefore is a prohibited ex post facto law."  Id. at 12-14 (quoting Riley v. Parole Bd., 219 N.J. 270, 285 (2014)).

---

[4] Because Hester was decided after the parties argued these appeals, we gave them an opportunity to file supplemental briefs addressing what if any impact Hester had on the issues raised, and what would be the effect on New Jersey's compliance with SORNA if we accorded the relief sought by appellants.

"[B]ecause the additional punishment attaches to a condition of defendants' sentences, the 'completed crime' necessarily relates back to the predicate offense." Id. at 14 (citations omitted).

The State argues Hester has no application because G.H. and G.A. concede that applying subsection (g) to their motions for relief in the Law Division did not violate the Constitutions. However, the Court has explained that "[a] law is retrospective if it 'appl[ies] to events occurring before its enactment' or 'if it changes the legal consequences of acts completed before its effective date.'" Riley, 219 N.J. at 285 (alteration in original) (emphasis added) (quoting Miller v. Florida, 482 U.S. 423, 430 (1987)). Here, the Legislature's adoption of subsection (g) "change[d] the legal consequences" of the guilty pleas G.H. and G.A. entered prior to its enactment. At the time of their convictions, both faced the prospect of presumptive lifetime registration, but both retained the possibility of relief pursuant to subsection (f). The trial courts' retroactive application of subsection (g) eliminated that opportunity, thereby changing the legal consequences of G.H.'s and G.A.'s convictions entered years earlier.

That relief from registration is conditioned upon future events, i.e., fifteen offense-free years and the ability to convince a judge the registrant is "not likely to pose a threat

to the safety of others[,]" N.J.S.A. 2C:7-2(f), does not change the retroactivity analysis. For example, in INS v. St. Cyr, 533 U.S. 289, 293 (2001), the Supreme Court considered the effect of the repeal of § 212(c) of the Immigration and Nationality Act, which gave the Attorney General discretion to waive deportation of resident aliens, on a lawful permanent resident who faced deportation after pleading guilty to selling a controlled substance.

Under the law applicable at the time of his conviction, St. Cyr would have been eligible for a § 212(c) waiver. Ibid. However, prior to removal proceedings being initiated against him, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), which limited the class of aliens who could apply for deportation relief. The Government argued St. Cyr was no longer eligible for a waiver. Ibid.

The Court held that St. Cyr's eligibility for discretionary relief was not foreclosed by the repeal of § 212(c). Id. at 326. The Court concluded Congress had not clearly expressed an intention to make IIRIRA § 304(b), the repealing statute, retroactive, yet the government sought to apply it retroactively to St. Cyr. Justice Souter explained "[t]he inquiry into

whether a statute operates retroactively demands a commonsense, functional judgment about whether the new provision <u>attaches new legal consequences to events completed before its enactment</u>." <u>Id.</u> at 321 (emphasis added) (citation omitted); <u>see</u> <u>Riley</u>, 219 N.J. at 285.

The Court found that "[t]here is a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation[,]" <u>id.</u> at 325, and concluded "new legal consequences" were attached to "completed" events if St. Cyr "would have been eligible for § 212(c) relief at the time of [his] plea under the law then in effect." <u>Id.</u> at 321, 326. Depriving St. Cyr of the benefits of a plea entered when § 212(c) discretionary relief was available would "be contrary to familiar considerations of fair notice, reasonable reliance, and settled expectations." <u>Id.</u> at 323 (citation omitted).

In short, contrary to the State's argument, the trial courts in this case applied subsection (g) retroactively to affect the legal consequences of G.H.'s and G.A.'s guilty pleas entered prior to subsection (g)'s enactment.

B.

"It is well-settled that statutes generally should be given prospective application." <u>In re D.C.</u>, 146 N.J. 31, 50 (1996)

(citing <u>Gibbons v. Gibbons</u>, 86 N.J. 515, 521 (1981)). "[R]etroactive application of new laws involves a high risk of being unfair." <u>Gibbons</u>, 86 N.J. at 522 (citation omitted). "The preference for prospective application of new legislation 'is based on our long-held notions of fairness and due process.'" <u>James v. N.J. Mfrs. Ins. Co.</u>, 216 N.J. 552, 563 (2014) (quoting <u>Cruz v. Cent. Jersey Landscaping, Inc.</u>, 195 N.J. 33, 45 (2008)). "It is 'presumed that provisions added by [an] amendment affecting substantive rights are intended to operate prospectively.'" <u>D.C.</u>, 146 N.J. at 50 (quoting <u>Schiavo v. John F. Kennedy Hosp.</u>, 258 N.J. Super. 380, 385 (App. Div. 1992), <u>aff'd o.b.</u>, 131 N.J. 400-01 (1993)).

In deciding whether a statute could apply retroactively, we consider "whether the Legislature intended to give the statute retroactive application," and "whether retroactive application of that statute will result in either an unconstitutional interference with vested rights or a manifest injustice." <u>James</u>, 216 N.J. at 563 (quoting <u>D.C.</u>, 146 N.J. at 50). The Legislature's intent may be expressed or implied. <u>Id.</u> at 564. "Implied retroactivity may be found from the statute's operation when retroactive application is necessary to fulfill legislative intent." <u>Ibid.</u> (citations omitted). An "expression of legislative intent should be given effect absent a compelling

reason not to do so." Ibid. (citing Nobrega v. Edison Glen Assocs., 167 N.J. 520, 537 (2001)).[5]

Certainly, the Legislature did not explicitly provide that subsection (g) applied retroactively, i.e., to those convicted of sex offenses prior to 2002. Instead, the Legislature provided subsection (g) would be "effect[ive] immediately," L. 2001, c. 392, § 2. "Such language 'bespeak[s] an intent contrary to, and not supportive of, retroactive application.'" Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 389 (2016) (quoting Cruz, 195 N.J. at 48).

The State correctly points out that the Legislature made subsection (g) applicable to any registrant who "has been convicted" of certain crimes, not to anyone who "is" or "hereafter is" convicted of those crimes. The Legislature's use of the present perfect tense indicates subsection (g) applies to an action completed, although not at any definite time in the past. See In re Adoption of N.J.A.C. 7II, 291 N.J. Super. 183, 191 (App. Div. 1996) (noting, "[g]rammatically, 'has been

_____

[5] A statute also may be applied retroactively if it is "curative," that is, designed to address some imperfection in the existing statute, or if the parties' expectations warrant retroactive application. James, 216 N.J. at 564-65 (citations omitted). "The[se] latter two categories of potential retroactive application are not implicated in this appeal." NL Industries, Inc. v. State, 228 N.J. 280, 295 (2017). We only note that the trial judge in G.A. erred to the extent she found subsection (g) was "curative."

located' is the present perfect tense, which expresses an action completed by the present time, although when it was completed is not determined"); see also Barrett v. United States, 423 U.S. 212, 216 (1976) (observing that Congress used the present perfect tense to "denot[e] an act that has been completed").

However, the Court has repeatedly said, "a statute [that] changes the settled law and relates to substantive rights is prospective only, unless there is an unequivocal expression of contrary legislative intent." Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 95 (1990) (emphasis added); e.g., Johnson, 226 N.J. at 397 ("Because the 2011 amendment altered settled law, we would expect to find an unequivocal statement that it was to be applied retroactively."); accord Bunk v. Port Auth., 144 N.J. 176, 194 (1996); Phillips v. Curiale, 128 N.J. 608, 617 (1992).

From its initial enactment, our courts have viewed "[a]ll of Megan's Law's provisions" as part of a comprehensive scheme, "a legitimate regulatory measure" in faithful service to the Legislature's public safety objectives. J.S., 444 N.J. Super. at 310-11 (citing Doe, 142 N.J. at 25, 73). Subsection (f) was part and parcel of the Legislature's reasonable conclusion that "the risk of reoffense can be fairly measured, and that knowledge of the presence of offenders provides increased defense against them." In re A.D., 441 N.J. Super. 403, 419

(App. Div. 2015) (quoting <u>Doe</u>, 142 N.J. at 25), <u>aff'd o.b.</u> 227 N.J. 626 (2017). Subsection (g) altered settled law in that certain registrants, like G.H. and G.A., can no longer terminate their registration obligations even though they no longer pose a threat to the safety of others, as actually found by the trial courts when each judge granted appellants relief from CSL pursuant to N.J.S.A. 2C:43-6(c).

The State argues we should infer the Legislature intended retroactive application of subsection (g) because a different interpretation "would be contrary to the public safety purpose underlying the amendment and Megan's Law itself." This argument ignores the fact that the Legislature believed Megan's Law, as originally enacted in 1994, fully satisfied its public safety objectives, even though it permitted potential relief from registration pursuant to subsection (f).

Moreover, the legislative history of subsection (g) supports no such assertion. The sponsor and committee statements in both the Assembly and the Senate make clear that subsection (g) was enacted to meet the requirements of the now repealed Wetterling Act and to insure continued federal funding. <u>See</u> <u>Sponsor's Statement to S. 2714</u> (Nov. 19, 2001); <u>Senate Law and Pub. Safety Comm., Statement to S. 2714</u> (Nov. 29, 2001);

Sponsor's Statement to A. 3987 (Dec. 6, 2001); Assembly Law and Pub. Safety Comm., Statement to A. 3987 (Dec. 13, 2001).

Importantly, the Wetterling Act neither "require[d] states accepting funds to impose . . . registration requirement[s] retroactively on individuals previously convicted of sex offenses," nor "'preclude[d] states from imposing any new registration requirements on offenders convicted prior to the establishment of the registration system.'" United States v. Shoulder, 738 F.3d 948, 950 (9th Cir. 2013) (quoting Final Guidelines for Megan's Law and the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 62 Fed. Reg. 39,009, 39,013 (July 21, 1997)). In other words, the Legislature's stated purpose for enacting subsection (g) — securing federal funding by complying with federal law — was fully served without retroactive application of the new statute.

In short, there is little to suggest the Legislature intended subsection (g) apply retroactively to those who were "convicted or released" prior to 2002. As a result, we need not determine whether retroactive application of subsection (g) "would result in unconstitutional interference with 'vested rights' or a 'manifest injustice.'" Johnson, 226 N.J. at 394 (citing Nobrega, 167 N.J. at 537). However, for the sake of completeness, we consider those issues.

A-2388-16T1

"Retroactive legislation that impairs or destroys a 'vested right' may violate the due process clauses of the federal . . . or state . . . constitutions," Twiss v. State, 124 N.J. 461, 469 (1991), but due process does not "prohibit retroactive civil legislation unless the consequences are particularly harsh and oppressive." Dept. of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 499 (1983). A "'vested right' encompasses a fixed interest entitled to protection from state action." Twiss, 124 N.J. at 470.

The Court explained the "essence of [the manifest injustice] inquiry" is "whether the affected party relied, to his or her prejudice, on the law that is now to be changed as a result of the retroactive application of the statute, and whether the consequences of this reliance are so deleterious and irrevocable . . . it would be unfair to apply the statute retroactively." Gibbons, 86 N.J. at 523-524 (citations omitted). It is an equitable doctrine that does not flow from constitutional requirements. Nobrega, 167 N.J. at 545 (citation omitted). "The manifest injustice analysis requires 'a weighing of the public interest in the retroactive application of the statute against the affected party's reliance on previous law, and the consequences of that reliance.'" Id. at 547 (quoting Nelson v. Bd. of Educ. of Tp. of Old Bridge, 148 N.J. 358, 371

(1997)). "In the modern context, a key element in evaluating retroactive change is whether the Legislature has denied a claimant all remedies or has modified available remedies." Phillips, 128 N.J. at 626.

Appellants had no vested right to relief from their registration obligations. As originally enacted, Megan's Law presumed they would be subject to lifetime registration; subsection (f) provided conditional relief contingent not only upon G.H.'s and G.A.'s own conduct, but also upon their ability to persuade a judge they no longer posed a threat to public safety. More importantly, "[t]here can be no vested right in the continued existence of a statute . . . which precludes its change or repeal." Phillips, 128 N.J. at 620 (citations omitted).

However, at the time of their guilty pleas, appellants could reasonably rely upon the possibility of relief from lifetime registration. The retroactive application of subsection (g) does not modify a remedy but eliminates an incentive integral to Megan's Law remedial purpose by denying certain registrants any relief from the obligations inherent in lifetime registration, along with the attendant opprobrium and potential criminal liability. Weighing that against the public's interest in the safety of the community, which was

adequately served by subsection (f) prior to the passage of subsection (g), we conclude retroactive application of subsection (g) to G.H. and G.A. would be manifestly unjust.

Lastly, we asked the parties to address whether according appellants relief in these appeals would affect New Jersey's compliance with SORNA. Under SORNA, sex offenders are classified as Tier I, Tier II, or Tier III offenders, depending on the severity of the underlying offense. 34 U.S.C. § 20911(2), (3) and (4). SORNA also increased the time of registration for certain classes of sex offenders, requiring: (1) 15 years for Tier I offenders, less a possible five-year reduction based on maintaining a "clean record" for 10 years; (2) 25 years for Tier II offenders; and (3) lifetime for Tier III offenders, absent a reduction to 25 years only for juvenile offenders based on maintaining a "clean record" for 25 years. 34 U.S.C. § 20915 (a) and (b).

Congress gave the United States Attorney General the authority to promulgate regulations and guidelines regarding SORNA's retroactive application to those convicted of sex offenses prior to the legislation's enactment. 34 U.S.C. § 20913(d). The Attorney General has since issued guidelines indicating that SORNA applies to those state registrants whose convictions pre-date SORNA. National Guidelines for Sex

<u>Offender Registration and Notification</u>, 73 Fed. Reg. 38,030 (July 2, 2008). In addition, the "Attorney General may exempt a state from implementing a provision of SORNA that 'would place the jurisdiction in violation of its constitution, as determined by a ruling of the jurisdiction's highest court[,]'" thus, "[i]n short, a state's highest court can declare unconstitutional a state's sex-offender registration provision without necessarily jeopardizing a state's federal funding." <u>C.K.</u>, 233 N.J. at 63.[6]

Appellants argue that New Jersey currently is not compliant with SORNA, <u>id.</u> at 62, our Legislature has twice declined to adopt the more onerous registration requirements in SORNA,[7] and if the Legislature were to enact SORNA, registrants would likely challenge its constitutionality and certainly its retroactive application.

The State asserts, without citation, that New Jersey currently loses ten percent of its potential federal funding

---

[6] We note that at least two state courts — Maine and New Hampshire — have specifically concluded the retroactive application of a lifetime registration requirement violated their state constitutions. <u>See</u> <u>Letalien</u>, 985 A.2d at 26 (retroactive lifetime ban without any ability to seek relief as before violated ex post facto clause); <u>Doe</u>, 111 A.3d at 1093-1100 (lifetime registration without relief, along with other amendments, violated ex post facto clause).

[7] The Legislature has not acted on two bills introduced in the Assembly in 2012 and 2014. <u>See</u> <u>S.850</u>/<u>A.764</u> (2012); <u>S. 1702</u>/<u>A.3832</u> (2014).

because it does not comply with SORNA, and granting appellants relief in this case would necessarily implicate subsection (g)'s retroactive application to other registrants, thereby making it "more difficult for New Jersey to receive full federal funding under SORNA." The State contends that lifetime registration for certain offenders, like G.H. and G.A., meets SORNA's Tier III requirements.

In 2016, the Department of Justice, Office of Justice Programs, Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking (SMART), issued its "SORNA Substantial Implementation Review — State of New Jersey." U.S. Dep't of Justice, Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking, <u>SORNA Substantial Implementation Review State of New Jersey</u> (July 2016), <u>https://smart.gov/pdfs/sorna/newjersey-hny.pdf</u>. That review noted:

> SORNA requires that offenses be classified based on the nature of the offense of conviction. The SMART Office has reviewed all statutes identified in New Jersey's materials and has identified New Jersey's placement of these statutes within the SORNA three tier levels . . . .
>
> New Jersey's current registration and notification scheme includes two categories of registrants: 1) offenders determined by a court to be repetitive and compulsive, who are deemed lifetime registrants required to report to local law enforcement every 90-

days to verify registration information; and 2) lifetime registrants who are required to report to local law enforcement each year to verify registration information.

[Id. at 3.]

SMART concluded, "Because New Jersey initially requires all sex offenders to register for life, New Jersey meets the SORNA requirements of this section." Ibid. (footnote omitted).

However, SMART also reviewed New Jersey's "Reduction of Registration Periods," i.e., subsection (f), which, as already noted does not comply with SORNA. SMART wrote:

> New Jersey deviates from SORNA in its allowance of reduced registration periods. Sex offenders may apply to the court to be removed from the sex offender registry if they committed only one offense, have not committed another offense for 15 years, and prove that they are not likely to pose a threat to the safety of others. Juveniles may also apply to the court to be removed from the sex offender registry if they were under the age of 14 at the time of their offense but are now over the age of 18.
>
> Because New Jersey uses a discretionary process to determine higher frequency of registration reporting and allows a broader class of registrants than SORNA prescribes to petition for removal, New Jersey does not meet the SORNA requirements of this section.

[Id. at 7 (emphasis added).]

Thus, contrary to the State's assertion, it appears that subsection (f), permitting a broad range of registrants relief

from registration, is a fundamental reason why New Jersey is not complying with SORNA.

In any event, whether the retroactive application of subsection (g) would further delay compliance with SORNA is not properly before us, having never been raised in the trial courts. We conclude only that the retroactive application of section (g) to G.H. and G.A. was not expressly or impliedly intended by the Legislature, and, even if it were, retroactive application would be manifestly unfair in these circumstances. We therefore reverse the orders under review and remand the matters to the respective trial courts, which shall conduct hearings on whether appellants currently qualify for the relief provided by subsection (f).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2388-16T1