# RECORD IMPOUNDED

## NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.  A-5321-16T1
       A-5322-16T1

IN THE MATTER OF
REGISTRANT H.D.

_____

IN THE MATTER OF
REGISTRANT J.M.

_____

APPROVED FOR PUBLICATION

December 7, 2018

APPELLATE DIVISION

Argued October 29, 2018 – Decided December 7, 2018

Before Judges Messano, Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Law Division, Essex County and Salem County, Docket Nos. ML-98-07-0091 and ML-98-17-0002.

Fletcher C. Duddy, Deputy Public Defender, argued the cause for appellant H.D. (in A-5321-16) (Joseph E. Krakora, Public Defender, attorney; Fletcher C. Duddy, of counsel and on the briefs; Stephanie A. Lutz, Assistant Deputy Public Defender, on the briefs).

Jesse M. DeBrosse, Assistant Deputy Public Defender, argued the cause for appellant J.M. (in A-5322-16) (Joseph E. Krakora, Public Defender, attorney; Jesse M. DeBrosse, on the briefs).

Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent State of New Jersey (in A-5321-16) (Theodore Stephens II, Acting Essex County

Prosecutor, attorney; Frank J. Ducoat and Maria I. Guerrero, Special Deputy Attorneys General/Acting Assistant Prosecutors, of counsel; Frank J. Ducoat, on the brief).

David M. Galemba, Assistant Prosecutor, argued the cause for respondent State of New Jersey (in A-5322-16) (John T. Lenahan, Salem County Prosecutor, attorney; David M. Galemba, of counsel and on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

We consolidate these two appeals that were argued back-to-back to issue a single opinion because they involve only one common legal issue.

Appellants J.M. and H.D. were convicted of sex offenses, see N.J.S.A. 2C:7-2(b), in 1994 and 1998 respectively, and sentenced to periods of probation. Pursuant to the provisions of Megan's Law, N.J.S.A. 2C:7-1 to 11, both were sentenced to community supervision for life (CSL) as required by N.J.S.A. 2C:43-6.4(a), the Violent Predator Incapacitation Act (VPIA), "enacted as a 'component' of Megan's Law at the time of its passage in 1994." In re G.H., 455 N.J. Super. 515, 524 (App. Div. 2018) (quoting State v.

Schubert, 212 N.J. 295, 305 (2012)).[1]  J.M. and H.D. also registered as sex offenders pursuant to N.J.S.A. 2C:7-2(a) and (c).

In 2001, J.M. was convicted of computer-related theft, N.J.S.A. 2C:20-29, a disorderly persons offense, and sentenced to one year of probation.[2]  Also in 2001, H.D. was convicted of fourth-degree failure to register as a sex offender, N.J.S.A. 2C:7-2(a)(3), and sentenced to one year of probation.  Both J.M. and H.D. have remained offense free since 2001.

Pursuant to N.J.S.A. 2C:7-2(f) (subsection (f)), any registrant may apply "to the Superior Court . . . to terminate the [registration] obligation upon proof that the person has not committed an offense within [fifteen] years following conviction or release from a correctional facility for any term of imprisonment imposed, whichever is later, and is not likely to pose a threat to the safety of others."  In 2017, J.M. moved to be relieved of his registration obligations.

H.D. sought the same relief in 2017, and additionally moved to terminate CSL pursuant to N.J.S.A. 2C:43-6.4(c), which states:

---

[1]  "The Legislature subsequently amended the statute, replacing CSL with parole supervision for life (PSL)."  G.H., 455 N.J. Super. at 524 (citing L. 2003, c. 267, § 1).

[2]  In 2003, the Legislature comprehensively revised the statute involving computer-related offenses, repealing N.J.S.A. 2C:20-29.  See L. 2003, c. 39, § 9.

[A] judge may grant a petition for release from a special sentence of [community] supervision for life only upon proof by clear and convincing evidence that the person has not committed a crime for [fifteen] years <u>since the last conviction or release from incarceration</u>, whichever is later, and that the person is not likely to pose a threat to the safety of others if released from [community] supervision.

[(Emphasis added).]

The provision "mirrors [subsection (f)]." <u>G.H.</u>, 455 N.J. Super. at 524 (quoting <u>In re J.S.</u>, 444 N.J. Super. 303, 312 (App. Div.), <u>certif. denied</u>, 225 N.J. 339 (2016)).

Following oral argument, the Law Division judge denied J.M.'s motion to terminate his registration requirements, reasoning J.M. was "precluded from being relieved from his Megan's Law obligations because of [his subsequent] disorderly persons conviction."

In support of his motion before a different Law Division judge, H.D. provided the report of Dr. James Reynolds, a psychologist, who opined that H.D. did "not present a risk of harm to members of the community." In his thoughtful written opinion, citing <u>Doe v. Poritz</u>, 142 N.J. 1, 21 (1995), the motion judge noted that Megan's Law imposed lifetime registration requirements upon convicted sex offenders, and "registrants are not entitled to terminate their obligations as a matter of right." Only those who "fall into a narrow and admittedly strict category will . . . be permitted to terminate their

registration requirement. That is, they must remain [offense free] for [fifteen] years following their conviction or release from incarceration on the underlying offense that obligates them to register." (Emphasis in original).

The judge quoted our opinion in In re A.D., 441 N.J. Super. 403, 423 (App. Div. 2015), aff'd o.b., 227 N.J. 626 (2017), in which we expressed some sympathy for, but ultimately rejected the argument that "there should be no absolute bar . . . to the termination of registration requirements, particularly where the repeat offenses are minor; and . . . not sexual in nature . . . ." Noting the panel in A.D. refused to substitute its judgment for that of the Legislature, id. at 424, the judge denied H.D.'s motion to terminate his registration obligations.

However, the judge reached a different result regarding termination of CSL. He concluded that N.J.S.A. 2C:43-6.4(c) was "unlike the statute that governs Megan's Law registration." He reasoned, "CSL may be terminated after a showing that a registrant has not committed an offense for a period of [fifteen] years. This [fifteen]-year period is measured from the date of the registrant's last conviction, not [his] underlying conviction under Megan's Law." He entered an order terminating CSL for H.D., and subsequently denied H.D.'s motion for reconsideration of the denial of the termination of his registration obligations.

I.

Before us, appellants argue subsection (f)'s clear and unambiguous language permits relief from their registration obligations because they remained offense free for fifteen years following their last conviction. They note that subsection (f)'s reference to the "conviction" that starts the fifteen-year clock is not limited to the sex-offense conviction that triggered Megan's Law's registration in the first instance.[3] In other words, according to appellants, the fifteen-year clock reset in 2001, due to appellants' subsequent "conviction or release from a correctional facility for any term of imprisonment." N.J.S.A. 2C:7-2(f). Alternatively, appellants contend that even if subsection (f) is ambiguous, various tenets of statutory construction, common sense and the rule of lenity require reversal.

The State also argues that subsection (f) is clear and unambiguous. However, the State argues a conviction for any offense forever bars relief when it occurs within fifteen years following a "conviction or release from a correctional facility" for the sex offense. The State contends this interpretation

---

[3] Because of the facts presented, we need not address the "permanent [and] irrevocable" "lifetime registration requirements" imposed by N.J.S.A. 2C:7-2(g) on those convicted of aggravated sexual assault, N.J.S.A. 2C:14-2(a), sexual assault, N.J.S.A. 2C:14-2(c)(1), or more than one sex offense. G.H., 455 N.J. Super. at 521 (quoting In re State ex rel. C.K., 233 N.J. 44, 66 (2018)).

is consistent with the Legislature's intent in enacting Megan's Law. Additionally, the State argues the Legislature's use of different language in N.J.S.A. 2C:43-6.4(c), specifically, that the applicant remain offense free for fifteen years from "the last conviction or release from incarceration," evidences an intention to treat CSL differently from registration, because registration is remedial, while CSL is penal in nature. Compare Doe, 142 N.J. at 73 (holding Megan's Law's registration requirements were "clearly and totally remedial in purpose"), with Schubert, 212 N.J. at 308 (holding CSL was "punitive rather than remedial at its core").

## II.

Because we confront a "question . . . of statutory interpretation, . . . we are 'neither bound by, nor required to defer to, the legal conclusions of a trial . . . court.'" In re N.B., 222 N.J. 87, 94 (2015) (quoting State v. Gandhi, 201 N.J. 161, 176 (2010)). "The overriding goal of all statutory interpretation 'is to determine as best we can the intent of the Legislature, and to give effect to that intent.'" State v. S.B., 230 N.J. 62, 67 (2017) (quoting State v. Robinson, 217 N.J. 594, 604 (2014)). "[W]e begin with the statute's plain language and give terms their ordinary meaning[,]" permissibly "draw[ing] inferences based on the statute's overall structure and composition." Id. at 68 (first citing DiProspero v. Penn, 183 N.J. 477, 492 (2005); and then citing State v. Hupka,

203 N.J. 222, 231-32 (2010)). "We do not view [statutory] words and phrases in isolation but rather in their proper context and in relationship to other parts of [the] statute, so that meaning can be given to the whole of [the] enactment." State v. Twiggs, 233 N.J. 513, 533 (2018) (alteration in original) (quoting State v. Rangel, 213 N.J. 500, 509, (2013)). "If the Legislature's intent is clear on the face of the statute, then the 'interpretative process is over.'" S.B., 230 N.J. at 68 (quoting Hupka, 203 N.J. at 232).

However, "[i]f the language does not lead to a single, clear meaning, we can look to extrinsic evidence, including legislative history, for guidance." State v. O'Driscoll, 215 N.J. 461, 474 (2013) (citing Rangel, 213 N.J. at 509). The statute's purpose and context provide sources of extrinsic evidence of legislative intent, J.S., 444 N.J. Super. at 308, as does the policy supporting its enactment. State v. Thomas, 166 N.J. 560, 567 (2001). We may also consider extrinsic evidence of legislative intent "if a literal reading of the statute would yield an absurd result, particularly one at odds with the overall statutory scheme." N.B., 222 N.J. at 99 (quoting Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012)). If ambiguity in a penal statute remains after consideration of extrinsic sources, the rule of lenity requires us to resolve that ambiguity in favor of a defendant. Twiggs, 233 N.J. at 533.

## A.

Recall, subsection (f) permits relief from registration obligations if "the person has not committed an offense within [fifteen] years <u>following conviction or release from a correctional facility for any term of imprisonment imposed</u>, whichever is later, and is not likely to pose a threat to the safety of others." N.J.S.A. 2C:7-2(f) (emphasis added). We conclude that the emphasized portion of subsection (f) is ambiguous, not as to when the fifteen-year-offense-free clock starts, but rather, more accurately, whether the clock may ever reset.

Only those "convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sex offense" are required to register. N.J.S.A. 2C:7-2(a)(1). Subsection (f), in turn, only applies to "person[s] required to register" under Megan's Law. N.J.S.A. 2C:7-2(f). "The registration requirements of Megan's Law, as well as related legislation adopted at the same time, including CSL, are imposed at sentencing." <u>J.S.</u>, 444 N.J. Super. at 311. As the State argues, a reasonable inference drawn from these provisions is that despite the lack of any specific reference in subsection (f) to the underlying sex offense, the Legislature intended repeat offenders to remain on the registry.

Appellants' argument is also reasonable. The Legislature could have specified that the only "conviction" that commenced the fifteen-year clock was the underlying sex offense conviction that required registration in the first instance. However, it did not do so. We presume that the Legislature knows how to express its intention, and "a court may not rewrite a statute or add language that the Legislature omitted." State v. Munafo, 222 N.J. 480, 488 (2015) (citing DiProspero, 183 N.J. at 492). In addition, the Legislature decided the fifteen-year period began even later for some offenders, i.e., upon their "release from a correctional facility." N.J.S.A. 2C:7-2(f). However, it chose to use the indefinite term — "any" — to describe the term of imprisonment, which release therefrom starts the fifteen-year clock. See ibid. (permitting relief from registration if offender remains offense free for fifteen years following "release from a correctional facility for any term of imprisonment imposed") (emphasis added). Here, too, the Legislature could have clearly stated that the fifteen-year period began only after the offender completed the "term of imprisonment imposed" on the conviction for the underlying sex offense, and no other. But, again, it chose not to do so.

In short, because subsection (f)'s plain language lacks "a single, clear meaning," we must consider other interpretive aids. O'Driscoll, 215 N.J. at 474.

10                                                                    A-5321-16T1

B.

The limited legislative history surrounding passage of subsection (f) provides little assistance in discerning the Legislature's intent. When introduced, subsection (f) stated:

> A person required to register under this act may make application to the Superior Court of this State to terminate the obligation upon proof that the person has not committed an offense within [fifteen] years following conviction or release from a correctional facility for any term of imprisonment imposed, whichever is later, and is not likely to commit an offense in the future.
>
> [Assemb. B. 84, Gen. Assemb., Reg. Sess. (N.J. 1994) (as introduced to Assembly, August 15, 1994) (emphasis added).]

Thereafter, the Legislature replaced the emphasized language with "and is not likely to pose a threat to the safety of others." L. 1994, c. 133, § 2. The original version, which focused on predicting the likelihood of any re-offense, arguably lends support to the State's position that subsection (f) was intended to permanently bar any relief to a sex offender who commits another offense. However, the Legislature did not adopt that version of subsection (f), choosing instead to focus on the predictability of a registrant's likely threat to public safety.

The State argues that registration is a presumptive lifetime obligation under Megan's Law which the Court found was permissible as part of a

comprehensive remedial design.  Doe, 142 N.J. at 21.  It asserts that subsection (f) provides relief in only a narrowly defined circumstance.  The State therefore argues that permanently barring subsection (f) relief to those who commit an offense, however minor, within the first fifteen years following conviction or release for the underlying sex offense is wholly consonant with Megan's Law's remedial purpose.  We disagree.

We need not reiterate in detail the Court's rationale supporting its initial conclusion that Megan's Law was "'clearly and totally remedial in purpose' and 'designed simply and solely to enable the public to protect itself from the danger posed by sex offenders.'"  G.H., 455 N.J. Super. at 522 (quoting Doe, 142 N.J. at 73).  The Court has since recognized the significance of subsection (f) to the remedial nature of the statutory scheme.  "The underlying assumption of [subsection (f) ] [was] that when a registrant, who has been [offense free] for fifteen or more years, no longer poses a risk to the safety of the public, keeping him bound to the registration requirements no longer serves a remedial purpose." Ibid. (quoting C.K., 233 N.J. at 64).

It follows that permanently denying relief to a registrant who has led a law-abiding life for fifteen years after conviction and otherwise meets the requirements of subsection (f) serves no remedial purpose.  One need only consider that the State's interpretation would permanently deny relief to an

12                                                    A-5321-16T1

offender who: 1) lives offense free for 14 years and 364 days after his conviction for a sex offense; 2) then commits a petty disorderly persons offense; and 3) lives another 15 offense-free years thereafter. That result does not serve any of Megan's Law remedial purposes and demonstrates the State's construction of subsection (f) leads to illogical and absurd outcomes that the Legislature never intended. See State v. Harper, 229 N.J. 228, 238-39 (2017) (concluding urged statutory construction would lead to absurd results that were contrary to the legislative scheme).

Appellants' construction of subsection (f), on the other hand, is entirely consistent with the Legislature's determination that registrants who have lived fifteen offense-free years and no longer "pose a threat to the safety of others" should be permitted to ask a court to terminate their registration obligations. Appellants' interpretation requires no alteration of the language in subsection (f). They recognize that, despite the relatively minor nature of the offenses, subsection (f)'s fifteen-year period began anew because of their 2001 convictions. See A.D., 441 N.J. Super. at 405 (citing N.J.S.A. 2C:1-14(k)) (holding that "the term 'offense' in [subsection (f)] means 'a crime, a disorderly persons offense or a petty disorderly persons offense,'" and bars relief during the fifteen-year period). In other words, appellants accept the legislative premise underlying subsection (f), that is, unless a registrant

remains offense free for fifteen years, the registration requirements first imposed by Megan's Law upon conviction of a sex offense remain intact.

As noted, although the judge would not relieve H.D. of his registration requirements, he nonetheless terminated H.D.'s CSL under N.J.S.A. 2C:43-6.4(c), finding that he had remained offense free for fifteen years since his last conviction and clearly and convincingly demonstrated he no longer posed a threat to public safety. Ibid. We noted the anomaly of a similar result in G.H., 455 N.J. Super. at 524.

The State seeks to explain this away by arguing CSL is part of the sentencing provisions of the Criminal Code, reflecting its penal nature, while registration is remedial. Undoubtedly, that is what the Court has held. Schubert, 212 N.J. at 307. However, those words are not talismans, which mere invocation transforms an illogical result into the reflection of implicit legislative intent.

In J.S., we were asked to decide if subsection (f)'s fifteen-year period commenced upon entry of a guilty plea or entry of a judgment of conviction. 444 N.J. Super. at 306. We recognized Megan's Law's comprehensive legislative scheme, noted the Legislature's ability to "fairly measure" the risk of re-offense, and held subsection (f)'s fifteen-year period began to run from the entry of a judgment of conviction, thus, measuring "the offense-free time

frame against fifteen years of compliance with the registration requirements." J.S., 444 N.J. Super. at 312.

We specifically found support for our conclusion in the language of N.J.S.A. 2C:43-6.4(c), "adopted contemporaneously with Megan's Law." Id. at 312. Despite the somewhat different language employed by the Legislature in N.J.S.A. 2C:43-6.4(c), we concluded that provision supported our interpretation of subsection (f), noting, "[w]e find it anomalous to suggest the Legislature intended one time frame for termination of Megan's Law registration and a different time frame for release from CSL." Ibid.

We recognize that J.S. resolved a different issue. Nevertheless, in that case, we harmonized the Legislature's use of different language to avoid an interpretation inconsistent with legislative intent. So, too, the construction urged by appellants here harmonizes the different verbiage employed by the Legislature in subsection (f) and N.J.S.A. 2C:43-6.4(c). It does not result in two different time frames for potential relief from the consequences of conviction for one singular sex offense: one period that permits permanent relief from CSL and another that permanently denies relief from registration obligations.

We are convinced that the Legislature never intended to forever bar relief from Megan's Law's registration requirements to every person who

15                                                                 A-5321-16T1

commits an offense, however minor, within the first fifteen years following conviction of a sex offense or release from custody after that conviction. We therefore reverse in A-5321-16 and A-5322-16 and remand the matters to the Law Division. The respective courts shall consider whether H.D. and J.M. have remained offense free since their 2001 convictions and are "not likely to pose a threat to the safety of others." N.J.S.A. 2C:7-2(f).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5321-16T1