SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

## In the Matter of Registrant H.D.; In the Matter of Registrant J.M.
### (A-73/74-18) (082254)

**Argued November 18, 2019 -- Decided March 17, 2020**

**SOLOMON, J., writing for the Court.**

In this appeal, the Court considers whether N.J.S.A. 2C:7-2(f) (subsection (f)) permits the termination of sex offender registration for registrants who commit an offense during the fifteen years following conviction or release but who then remain offense-free for fifteen years.

In 1994, J.M. pled guilty to aggravated criminal sexual contact. In 1997, H.D. pled guilty to endangering the welfare of a child. Both H.D. and J.M. were sentenced to probation and required to register as sex offenders. In 2001, J.M. pled guilty to a computer crime and H.D. pled guilty to failure to register as a convicted sex offender. They were both sentenced to probation. Neither has since been convicted of a crime.

In 2017, H.D. and J.M. petitioned for release from their Megan's Law registration obligations, contending that they had satisfied subsection (f)'s requirement that they remain offense-free for fifteen years. Their motions were denied. The Appellate Division consolidated the appeals and reversed, determining that subsection (f) is ambiguous as to whether its requirement of fifteen years of offense-free conduct resets following an offender's subsequent criminal conviction. Turning to "interpretive aids," the appellate court held that the rejections of H.D. and J.M.'s motions were inconsistent with Megan's Law's remedial purpose. The Court granted certification. 237 N.J. 582 (2019).

**HELD:** Under the plain language of subsection (f), the fifteen-year period during which an eligible registrant must remain offense-free to qualify for registration relief commences upon his or her conviction or release from confinement for the sex offense that gave rise to his or her registration requirement.

1. Megan's Law requires certain sex offenders, depending on the type and time of offense, to register with local law enforcement agencies. N.J.S.A. 2C:7-2 is the statute that mandates registration and delineates the registration process and its exceptions. N.J.S.A. 2C:7-2(b) enumerates the sex offenses that require registration, and N.J.S.A.

1

2C:7-2(c) details registration requirements and procedures, including for those convicted of the offenses set forth in subparts (b)(1) and (b)(2). Subsection (f), in turn, prescribes conditions under which registrants may seek to terminate their registration requirements. It specifies that, "[e]xcept as provided in subsection (g) of this section, <u>a person required to register under this act</u> may make application to the Superior Court of this State to terminate the obligation upon proof that the person has not committed an offense <u>within 15 years following conviction or release from a correctional facility for any term of imprisonment imposed</u>, whichever is later, and is not likely to pose a threat to the safety of others." N.J.S.A. 2C:7-2(f) (emphases added). (pp. 8-11)

2. Reading subsection (f) as part of N.J.S.A. 2C:7-2, its language is unambiguous. It plainly refers to the conviction or release that triggers the registration requirement established in subsection (b) and detailed in subsection (c). The mechanism for registration relief set forth in subsection (f) is linked both by logic and by language to the initial mandate of registration which stems from a conviction for certain offenses; subsection (f) is thus tethered to the same underlying sex offense that marked the starting point of the registration requirement. The word "any" makes it clear that the fifteen-year clock will not start until release, no matter how long or short the period of imprisonment. Further, when the Legislature decided to extend relief from community supervision for life or its successor, parole supervision for life (PSL), to sex offenders under another statute, it did so in precise terms. Under N.J.S.A. 2C:43-6.4(c), individuals may apply for PSL relief "upon proof by clear and convincing evidence that the person has not committed a crime for 15 years since the <u>last</u> conviction or release from incarceration, whichever is later." (emphasis added). The PSL provisions demonstrate that the Legislature knows how to tie Megan's Law requirements to non-Megan's Law offenses when it chooses; it did not choose to do so in subsection (f). (pp. 11-14)

3. The Court addresses additional arguments by the registrants and amici. The issue here is limited to statutory interpretation; the Court does not decide whether requiring the continued registration of a hypothetical registrant who is offense-free for more than fifteen years and poses no likely danger to the public would pass constitutional muster. And N.J.S.A. 2C:7-2(g) denies Megan's Law registration relief to those perceived to be the most dangerous sex offenders. Other Megan's Law registrants are unaffected by subsection (g)'s limitations and may still seek registration relief. (pp. 14-16)

**The judgment of the Appellate Division is REVERSED and the matter is REMANDED for entry of judgment.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON'S opinion.**

2

SUPREME COURT OF NEW JERSEY
A-73/74 September Term 2018
082254

In the Matter of
Registrant H.D.

_____

In the Matter of
Registrant J.M.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
457 N.J. Super. 205 (App. Div. 2018).

| Argued | Decided |
|--------|---------|
| November 18, 2019 | March 17, 2020 |

Frank J. Ducoat, Special Deputy Attorney General/Acting
Assistant Prosecutor, agued the cause for appellant State
of New Jersey in A-73-18 (Theodore N. Stephens II,
Acting Essex County Prosecutor, attorney; Frank J.
Ducoat, of counsel and on the brief).

David M. Galemba, Assistant Prosecutor, argued the
cause for appellant State of New Jersey in A-74-18 (John
T. Lenahan, Salem County Prosecutor, attorney; David
M. Galemba, of counsel and on the brief).

Fletcher C. Duddy, Deputy Public Defender, argued the
cause for respondent H.D. in A-73-18 (Joseph E.
Krakora, Public Defender, attorney; Fletcher C. Duddy of
counsel and on the briefs).

Jesse M. DeBrosse, Assistant Deputy Public Defender,
argued the cause for respondent J.M. in A-74-18 (Joseph
E. Krakora, Public Defender, attorney; Jesse M.
DeBrosse of counsel and on the briefs).

1

Emily R. Anderson, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Emily R. Anderson, of counsel and on the brief).

Alexander Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Alexander Shalom and Jeanne LoCicero, on the brief).

JUSTICE SOLOMON delivered the opinion of the Court.

N.J.S.A. 2C:7-2(f) (subsection (f)) allows Megan's Law registrants to petition the Superior Court "to terminate the [registration] obligation upon proof that the person has not committed an offense within 15 years following conviction or release from a correctional facility for any term of imprisonment imposed, whichever is later, and is not likely to pose a threat to the safety of others."  This case requires us to determine whether subsection (f) permits the termination of sex offender registration for registrants who commit an offense during the fifteen years following conviction or release but who then remain offense-free for fifteen years.

The Appellate Division held that H.D. and J.M., two Megan's Law registrants who committed non-predicate Megan's Law offenses within fifteen years of their sex offense convictions but then remained offense-free for a

2

fifteen-year period, satisfied subsection (f). We conclude the judgment of the Appellate Division is inconsistent with subsection (f)'s plain language and therefore reverse.

## I.

In 1994, J.M. pled guilty to third-degree aggravated criminal sexual contact in violation of N.J.S.A. 2C:14-3(a). In 1997, H.D. pled guilty to endangering the welfare of a child in violation of N.J.S.A. 2C:24-4. Both H.D. and J.M. were sentenced to probation and required to register as sex offenders pursuant to N.J.S.A. 2C:7-2(a) and (c). In 2001, J.M. pled guilty to a computer crime in violation of N.J.S.A. 2C:20-29, and H.D. pled guilty to failure to register as a convicted sex offender in violation of N.J.S.A. 2C:7-2(a) and (e). They were both sentenced to probation. Neither registrant has since been convicted of a crime.

In 2017, H.D. and J.M. petitioned in Essex and Salem Counties, respectively, for release from their Megan's Law registration obligations, contending that they had satisfied subsection (f)'s requirement that they remain offense-free for fifteen years. Their motions were opposed by the county prosecutors' offices. J.M.'s motion was denied in a brief order. In denying H.D.'s motion, the Essex County Superior Court held that Megan's Law registrants "must remain offense-free for 15 years following their convictions

3

or release from incarceration on the <u>underlying offense that obligates them to register</u>."[1]  H.D. and J.M. both appealed.

The Appellate Division consolidated the appeals and reversed, determining that subsection (f) is ambiguous as to whether its requirement of fifteen years of offense-free conduct resets following an offender's subsequent criminal conviction.  It found that the Legislature's use of an "indefinite term -- 'any' --" in subsection (f) compelled "consider[ation of] other interpretive aids" to glean subsection (f)'s meaning.  <u>In re H.D.</u>, 457 N.J. Super. 205, 214 (App. Div. 2018).  The Appellate Division held that the Superior Courts' rejections of H.D. and J.M.'s motions were inconsistent with Megan's Law's remedial purpose.  The panel concluded "that the Legislature never intended to forever bar relief from Megan's Law registration requirements to every person who commits an offense, however minor, within the first fifteen years following conviction of a sex offense or release from custody after that conviction."  <u>Id.</u> at 218.

---

[1]  Following his sex offense conviction, H.D. was also sentenced to community supervision for life pursuant to N.J.S.A. 2C:43-6.4.  "A 2003 amendment to N.J.S.A. 2C:43-6.4 replaced all references to 'community supervision for life' with 'parole supervision for life' [(PSL)]."  <u>State v. Perez</u>, 220 N.J. 423, 437 (2015).  H.D. moved to terminate his PSL and sex offender registration obligations in the same proceeding.  The Superior Court granted his PSL termination request.  The State has not appealed that ruling.

The Essex and Salem County Prosecutors' Offices (prosecutors) filed petitions for certification, which this Court granted. 237 N.J. 582 (2019). We granted the Office of Attorney General (Attorney General) and the American Civil Liberties Union of New Jersey (ACLU) leave to appear as amici curiae.

II.

The prosecutors challenge the Appellate Division's determination of statutory ambiguity. They claim that only a tortured reading of subsection (f) permits the fifteen-year clock to restart following a new offense within fifteen years of the predicate sex offense. The prosecutors note that the Legislature utilized plain language in the Violent Predator Incapacitation Act to specify that the fifteen-year time period in that statute restarts after a subsequent offense -- "15 years since the last conviction or release from incarceration." (quoting N.J.S.A. 2C:43-6.4(c)). In their view, the absence of similar language in subsection (f) is telling.

The Attorney General echoes the prosecutors' arguments and advocates for a contextual reading of subsection (f)'s operative time period, under which subsection (f)'s reference to "conviction or release" must be read together with its earlier reference to individuals "required to register under this act," indicating the Legislature's intent to tie the beginning of the fifteen-year period to punishment for the sex offense requiring registration.

H.D. and J.M. point to the Legislature's use in subsection (f) of "any" to qualify "term of imprisonment imposed" as proof the Legislature did not limit registrants seeking relief to a single fifteen-year offense-free period. H.D. and J.M. suggest "any" connotes the absence of limitations. Additionally, H.D. and J.M. assert that the prosecutors' interpretation of subsection (f) would render subsection (g) superfluous.

Lastly, the registrants advance a policy argument. They contend that reversal of the Appellate Division would hamper efforts to reintegrate into society sex offenders with little risk of reoffending, unmoor Megan's Law from any rational basis, and jettison this Court's conclusion in Doe v. Poritz, 142 N.J. 1 (1995), that the registration scheme is remedial.

Like H.D. and J.M., the ACLU contends that the prosecutors' interpretation of subsection (f) is not necessary to promote public safety and flouts the New Jersey and United States Constitutions.

### III.

At issue here is whether subsection (f) permits relief for Megan's Law registrants who commit a new offense within the first fifteen years they are required to register as a sex offender. Resolution of this issue turns on the meaning of "conviction or release from a correctional facility for any term of imprisonment imposed" in subsection (f). The State argues that phrase denotes

6

"the underlying offense that obligates them to register"; in the registrants'

view, it encompasses subsequent offenses that would re-start the fifteen-year

clock.

A.

We review this question of statutory interpretation "de novo,

unconstrained by deference to the decisions of the trial court or the appellate

panel." State v. Grate, 220 N.J. 317, 329 (2015). Our review, however, must

follow the well-settled rules of statutory construction "to determine and give

effect to the Legislature's intent." DYFS v. A.L., 213 N.J. 1, 20 (2013).

Generally, "the best indicator of that intent is the plain language chosen

by the Legislature," State v. Frye, 217 N.J. 566, 575 (2014) (quoting State v.

Gandhi, 201 N.J. 161, 176 (2010)), "giv[ing] words 'their ordinary meaning

and significance,'" State v. Fuqua, 234 N.J. 583, 591 (2018) (quoting Tumpson

v. Farina, 218 N.J. 450, 467 (2014)). We will not "rewrite a plainly-written

enactment of the Legislature [or] presume that the Legislature intended

something other than that expressed by way of the plain language." State in

Interest of K.O., 217 N.J. 83, 91-92 (2014)).

Where "a statute's plain language is clear, we apply that plain meaning

and end our inquiry." Garden State Check Cashing Serv., Inc. v. Dep't of

Banking & Ins., 237 N.J. 482, 489 (2019). However, if the plain language is

7

ambiguous, the Court will look to extrinsic evidence, <u>Murray v. Plainfield Rescue Squad</u>, 210 N.J. 581, 592 (2012), including "legislative history and relevant canons of statutory construction," to determine the Legislature's intent, <u>State v. Shelley</u>, 205 N.J. 320, 325 (2011). Additionally, we interpret statutes "in context with related provisions," <u>DiProspero v. Penn</u>, 183 N.J. 477, 492 (2005), since "the context is [often] determinative of the meaning," <u>McDonald v. Bd. of Chosen Freeholders</u>, 99 N.J.L. 170, 172 (E. & A. 1923).

B.

Here, we apply those principles of statutory interpretation to a provision of Megan's Law, which was enacted in 1994 in response to the abduction, rape, and murder of seven-year-old Megan Kanka by her neighbor. <u>Smith v. Doe</u>, 538 U.S. 84, 89 (2003); <u>Poritz</u>, 142 N.J. at 12. The neighbor "had prior convictions for sex offenses against children," but Megan's family was unaware of his criminal record. <u>Smith</u>, 538 U.S. at 89. Megan's Law was the Legislature's attempt to protect the community and prevent similar crimes. <u>In re Registrant C.A.</u>, 146 N.J. 71, 80 (1996).

To achieve those ends, the Legislature created a system that "requires certain sex offenders, depending on the type and time of offense, to register with local law enforcement agencies." <u>In re T.T.</u>, 188 N.J. 321, 327 (2006).

8

N.J.S.A. 2C:7-2 is the statute that mandates registration and delineates the registration process and its exceptions.

The first subsection of N.J.S.A. 2C:7-2 makes registration mandatory for certain individuals who have "been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sex offense," and criminalizes failure to register by those individuals. N.J.S.A. 2C:7-2(a)(1) to (3). The next subsection enumerates the sex offenses that require registration. N.J.S.A. 2C:7-2(b). Under subpart (b)(1), commission of a listed offense, if "characterized by a pattern of repetitive, compulsive behavior," requires registration "regardless of the date of the commission of the offense or the date of conviction." Under the next subpart, registration is required for certain other offenses

> if the conviction, adjudication of delinquency or acquittal by reason of insanity is entered on or after the effective date [Oct. 31, 1994] of this act or the offender is serving a sentence of incarceration, probation, parole or other form of community supervision as a result of the offense or is confined following acquittal by reason of insanity or as a result of civil commitment on the effective date [Oct. 31, 1994] of this act.
>
> [N.J.S.A. 2C:7-2(b)(2).]

Subpart (b)(3) makes registration mandatory for those with an out-of-state "conviction, adjudication of delinquency, or acquittal by reason of insanity"

9

for an offense or under circumstances similar to the offenses listed in subparts (b)(1) and (b)(2).  N.J.S.A. 2C:7-2(b)(3).

Subsection (c) of N.J.S.A. 2C:7-2 details registration requirements and procedures, including for those convicted of the offenses set forth in subparts (b)(1) and (b)(2).  Subpart (c)(1) addresses "[a] person who is required to register and who is under supervision in the community on probation, parole, furlough, work release, or a similar program"; subpart (c)(2) applies to "[a] person confined in a correctional or juvenile facility or involuntarily committed"; and subpart (c)(4) sets forth registration procedures for "[a] person required to register on the basis of a conviction prior to the effective date who is not confined or under supervision on the effective date [Oct. 31, 1994] of this act."  N.J.S.A. 2C:7-2(c)(1), (2), and (4).

Subsection (d) of the statute governs registration upon a registrant's change of address, and subsection (e) mandates regular address verification.  N.J.S.A. 2C:7-2(d) and (e).  Subsection (e) also tracks the classifications of underlying sex offenses in subsection (b), requiring verification every ninety days for individuals required to register under subpart (b)(1) and annual verification for those required to register under subparts (b)(2) and (b)(3).  N.J.S.A. 2C:7-2(e).

10

Subsection (f), in turn, prescribes conditions under which registrants may seek to terminate their registration requirements:

> Except as provided in subsection (g) of this section, a person required to register under this act may make application to the Superior Court of this State to terminate the obligation upon proof that the person has not committed an offense within 15 years following conviction or release from a correctional facility for any term of imprisonment imposed, whichever is later, and is not likely to pose a threat to the safety of others.
>
> [N.J.S.A. 2C:7-2(f) (emphases added).]

Reading subsection (f) as part of N.J.S.A. 2C:7-2, we find its language unambiguous. It plainly refers to the conviction or release that triggers the registration requirement established in subsection (b) and detailed in subsection (c). The mechanism for registration relief set forth in subsection (f) is linked both by logic and by language to the initial mandate of registration which stems from a conviction for certain offenses. See N.J.S.A. 2C:7-2(b)(1) to (3). Aside from those required to register on the basis of a conviction that predates the effective date of Megan's Law, N.J.S.A 2C:7-2(c)(4), the mandate commences upon conviction of a predicate offense for those "under supervision in the community on probation, parole, furlough, work release, or a similar program," N.J.S.A. 2C:7-2(c)(1), or upon release from confinement, N.J.S.A. 2C:7-2(c)(2). Like subsection (c), subsection (f) begins with a

11

reference to individuals "required to register under this act," and reuses the terms "conviction" and "release" that start the registration process under subsection (c). In doing so, the Legislature tethered the registration relief offered in subsection (f) to the same underlying sex offense that marked the starting point of the registration requirement.

The registrants' reliance on the word "any" is misplaced. N.J.S.A. 2C:7-2 applies to a variety of sex offenses, and sentences upon conviction for Megan's Law offenses vary from supervised release to confinement in a correctional facility. See N.J.S.A. 2C:7-2(c)(1) to (2). "Any" also acknowledges that not all sentences of imprisonment will be the same and makes it clear that the fifteen-year clock will not start until release, no matter how long or short the period of imprisonment. The word thus has meaning within the context of N.J.S.A. 2C:7-2. If the statute read "within 15 years following any conviction or release," the registrants might have a stronger argument.

Still, when the Legislature decided to extend relief from community supervision for life (CSL) or its successor, PSL,[2] to sex offenders under

_____

[2] CSL and PSL are "indefinite forms of parole," Riley v. N.J. State Parole Bd., 219 N.J. 270, 289 (2014), which subject sex offenders to a "variety of conditions beyond those imposed on non-sex offender parolees," Perez, 220 N.J. at 437. A 2003 amendment to N.J.S.A. 2C:43-6.4 replaced references to

12

another statute, it did so in precise terms. Under N.J.S.A. 2C:43-6.4(c), individuals may apply for PSL relief "upon proof by clear and convincing evidence that the person has not committed a crime for 15 years since the last conviction or release from incarceration, whichever is later." (emphasis added).

While subsection (f) and PSL share the orbit of sex offender regulations, PSL applies prospectively, Perez, 220 N.J. at 440, but subsection (f) is retroactive, Poritz, 142 N.J. at 13-14. Hence, "any" was the appropriate qualifier in subsection (f) because a Megan's Law offender who committed an offense and was released from confinement fifteen years before the law's effective date could apply for registration relief immediately. PSL's prospective scope did not require the same opportunity.

Furthermore, the use of "last conviction or release from incarceration" with respect to PSL registration relief is apposite because it is not limited to the sex offense conviction that led to an offender's PSL sentence. Indeed,

---

CSL with PSL. State v. Hester, 233 N.J. 381, 387 (2018). PSL's "restrictions . . . monitor every aspect of the daily life of an individual convicted of a qualifying sexual offense and expose that individual to parole revocation and incarceration on the violation of one, some, or all conditions." Id. at 441. PSL, like other notification and registration provisions of Megan's Law, "is designed to protect the public from recidivism by sexual offenders." Id. at 436-37.

13

N.J.S.A. 2C:43-6.4(b) contemplates and specifically provides for incarceration for a term that includes sex offenses and non-sex offenses, stating that

> [i]f the defendant is serving a sentence of incarceration for another offense at the time he completes the custodial portion of the sentence imposed on the present offense, the special sentence of parole supervision for life shall not commence until the defendant is actually released from incarceration for the other offense.

The use of "last conviction" in N.J.S.A. 2C:43-6.4(c) thus incorporates the potential "other offense" -- the non-Megan's Law offense -- from the previous subsection.

The PSL provisions demonstrate that the Legislature knows how to tie Megan's Law requirements to non-Megan's Law offenses when it chooses; it did not choose to do so in subsection (f). Under the plain language of subsection (f), the fifteen-year period during which an eligible registrant must remain offense-free to qualify for registration relief commences upon his or her conviction or release from confinement for the sex offense that gave rise to his or her registration requirement.

## C.

Additional arguments have been advanced by the registrants and the ACLU. In addressing those contentions, we note that in 1995, this Court considered a constitutional challenge to Megan's Law's registration and

14

notification provisions.  Poritz, 142 N.J. at 1.  We upheld Megan's Law's registration and notification provisions, noting that "they are not retributive laws, but laws designed to give people a chance to protect themselves and their children."  Id. at 13; see also N.J.S.A. 2C:7-1 ("The danger of recidivism posed by sex offenders and offenders who commit other predatory acts against children . . . require a system of registration that will permit law enforcement officials to identify and alert the public when necessary for the public safety.").  We found that the provisions are "remedial in purpose" and represent the Legislature's attempt to shield the public from the risk of sex offenders in the community while not upending the lives of those offenders who pose little risk of re-offense.  Poritz, 142 N.J. at 73.

The issue before the Court here is limited to statutory interpretation -- the meaning of subsection (f).  We do not have before us a due process challenge to the statute, facially or as applied to a particular case.  Therefore, we will not decide whether requiring the continued registration of a hypothetical registrant who is offense-free for more than fifteen years and poses no likely danger to the public would pass constitutional muster.

The registrants' subsection (g) argument is likewise unavailing.  Around the time Megan's Law was passed, Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act and

15

tied state funding to compliance with its federal registration requirements. To meet those requirements, the New Jersey Legislature enacted N.J.S.A. 2C:7-2(g) in 2002. State in Interest of C.K., 233 N.J. 44, 60-61 (2018). Subsection (g) denies Megan's Law registration relief to those perceived to be the most dangerous sex offenders -- individuals "convicted of, adjudicated delinquent, or acquitted by reason of insanity for more than one sex offense" or "for aggravated sexual assault" or "sexual assault." N.J.S.A. 2C:7-2(g). Other Megan's Law registrants are unaffected by subsection (g)'s limitations and may still seek registration relief.

## IV.

For the reasons set forth above, the judgment of the Appellate Division is reversed, and the matter is remanded for the entry of judgment consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON'S opinion.