**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3069-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RONALD WALTON,

    Defendant-Appellant.

_____

Submitted May 17, 2021 – Decided June 4, 2021

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 13-06-1489.

Joseph E. Krakora, Public Defender, attorney for appellant (Karen A. Lodeserto, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Caroline C. Galda, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Ronald Walton appeals from the December 30, 2019 order of the Law Division denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

The following facts are derived from the record. Walton has a long history as a sex offender. In 1968, he was convicted by a jury in Tennessee of assault and battery with intent to commit rape and burglary. He was sentenced to ten to twelve years in prison and released after serving six years and five months.

In 1980, Walton pled guilty in Indiana to the rape of a fourteen-year-old girl, a class A felony. As the victim was walking across a cornfield near her middle school, Walton grabbed her by the throat, covered her mouth, and said "don't scream, or I'll kill you." He forced her to remove her pants and raped her. The court sentenced Walton to forty-five years in prison.

Also in 1980, Walton confessed to entering the home of an Indiana woman at 2:00 a.m. While holding a knife, he grabbed the victim by the throat and threatened to kill her. Walton forced the victim to disrobe and raped her. Over the vehement objections of the victim, Walton's rape charge for this assault was dismissed as part of his plea agreement for the rape of the fourteen-year-old girl.

2

After his release from prison, Walton participated in a sex offender treatment program. During treatment, he took responsibility for his crimes and admitted to having raped three additional women for which he was not charged.

In 2012, Walton moved to New Jersey. He registered as a sex offender under Megan's Law, N.J.S.A. 2C:7-2(b). Included in the registration forms he signed is Walton's acknowledgement that he must verify his address every year with the police department in the municipality in which he lives. He also acknowledged that when doing so he must provide proof of his address, "such as a letter or bill." Walton also acknowledged that:

> I understand that if I remain offense free for [fifteen] years from the date of conviction or release from prison, whichever is later, I may apply to the Superior Court to be relieved of my obligation to register, unless I have more than one sex offense or if any of the offenses were Aggravated Sexual Assault or Sexual Assault.

Based on objective criteria, including the seriousness of his offenses, New Jersey authorities classified Walton as a Tier III offender, reflecting the highest risk of reoffending.

As of December 26, 2012, Walton was registered with East Orange police as residing at an address in that municipality. In April 2013, he moved to a residence in Orange. On May 13, 2013, Walton went to the Orange police

headquarters to re-register and provide notice of his new address. To verify his new address, Walton presented a letter allegedly written by his housemate, Kyle Marable. When a police officer contacted Marable, he denied being the author of the letter and stated that he was not aware of Walton's status as a sex offender. Marable advised the officer that he would not have allowed Walton to reside with him had he known of his criminal history.

A grand jury subsequently indicted Walton, charging him with: (1) fourth-degree knowingly providing false information concerning his place of residence, N.J.S.A. 2C:7-2(d) (Count One), based on Walton's false claim that Marable wrote the letter confirming his new address; and (2) fourth-degree failure to notify of change of address, N.J.S.A. 2C:7-2(d) (Count Two), based on Walton's failure to notify Orange police of his new residence no less than ten days prior to changing his residence.[1]

On September 27, 2013, pursuant to an agreement, Walton entered a guilty plea to Count One of the indictment. To establish the factual basis for the plea, Walton admitted that he produced a letter to Orange police to verify his new

---

[1] Effective January 17, 2014, violations of the registration provisions of N.J.S.A. 2C:7-2(d) are third-degree crimes. L. 2013, c. 234. The change in the degree of the offense may not be applied to defendants whose underlying convictions were committed prior to January 17, 2014. State v. Hester, 233 N.J. 381, 392-93 (2018).

address and represented that it had been written by Marable, when in fact, Walton had written the letter. When asked by his counsel, "[s]o you would agree that you provided false information to the police?" Walton answered, "Yes."

During his pre-sentencing interview, Walton stated that the charges to which he pled guilty were untrue because he lived at the residence stated in the letter. At the December 6, 2013 sentencing hearing, however, Walton's counsel stated that Walton stood by his guilty plea because "[h]e forged the letter." The court clarified that "the representation that he lived there was true; the documentation he provided . . . to support same was false." Walton thereafter stated that "this did happen," apologized to the court, and said that "it will not happen again." The court sentenced Walton consistent with the plea agreement to time served, which was just under one year, and dismissed Count Two of the indictment. Walton had been facing between eighteen months and three years in prison on the two counts of the indictment. Walton did not file a direct appeal.

On August 20, 2018, Walton filed a PCR petition alleging he received ineffective assistance of counsel that caused him to accept the plea agreement because his attorney: (1) did not advise him that his conviction would delay his eligibility to apply for termination of the Megan's Law registration requirements

under N.J.S.A. 2C:7-2(f); (2) did not investigate and pursue Walton's theory of an affirmative defense; and (3) pressured him into pleading guilty.

On December 30, 2019, Judge Martin Cronin issued a comprehensive written opinion denying the petition without an evidentiary hearing. The court rejected Walton's first claim for a number of reasons. We set forth the relevant statutory provisions to give context to the judge's decision. N.J.S.A. 2C:7-2(f), a provision of Megan's Law, provides that

> [e]xcept as provided in subsection g. of this section, a person required to register under this act may make application to the Superior Court of this State to terminate the obligation upon proof that the person has not committed an offense within [fifteen] years following conviction or release from a correctional facility for any term of imprisonment imposed, whichever is later, and is not likely to pose a threat to the safety of others.

Subsection (g) of the statute provides, in relevant part, that

> [a] person required to register under this section who has been convicted of . . . more than one sex offense as defined in subsection b. of this section or who has been convicted of . . . aggravated sexual assault . . . or sexual assault . . . is not eligible under subsection f. of this section to make application to the Superior Court of this State to terminate the registration obligation.
>
> [N.J.S.A. 2C:7-2(g).]

Although Walton argues that his 2013 guilty plea "restarts" the fifteen-year period for eligibility to seek termination of the registration requirement, the Supreme Court has held that "the fifteen-year period during which an eligible registrant must remain offense-free to qualify for registration relief commences upon his or her conviction or release from confinement for the sex offense that gave rise to his or her registration requirement[,]" In re H.D., 241 N.J. 412, 423 (2020), and subsection (f) does not allow for "subsequent offenses [to] re-start the fifteen-year clock." Id. at 418. Thus, the conviction resulting from Walton's 2013 guilty plea precludes him from seeking termination of the registration requirement.

First, the judge held that any effect that the 2013 guilty plea had on Walton's registration requirement was a collateral consequence of his conviction for violating N.J.S.A. 2C:7-2(d). Noting that a defendant must be informed by counsel of only the direct or penal consequences of a guilty plea, see State v. Bellamy, 178 N.J. 127, 137 (2003), Judge Cronin concluded that the registration requirement, as well as the parameters of Walton's eligibility to seek termination of that requirement, were the direct consequence of his 1980 sexual assault conviction, not the 2013 plea. Thus, the judge concluded that trial counsel's alleged failure to advise Walton of the effect his plea would have on his

eligibility to seek termination of the registration requirement could not constitute ineffective assistance of counsel.

Second, the judge concluded that because the Supreme Court has held the registration requirements of Megan's Law are remedial, and not punitive, see Doe v. Poritz, 142 N.J. 1, 13 (1995), any effect that the 2013 guilty plea has on Walton's eligibility to seek termination of those requirements must also be remedial, and not punitive. This, the judge concluded, is an additional reason why Walton's counsel did not have a duty to inform him that the guilty plea would have an effect on his eligibility to seek termination of the registration requirement.

Third, the judge concluded that when Walton entered his guilty plea, he was ineligible to seek termination of the registration requirement under N.J.S.A. 2C:7-2(f), with or without the conviction resulting from the plea. At the time Walton entered his guilty plea, N.J.S.A. 2C:7-2(g) rendered him ineligible to seek termination because he had "been convicted of . . . more than one sex offense" and of "aggravated sexual assault . . . or sexual assault." Those provisions of N.J.S.A. 2C:7-2(g) were added to the statute by amendment effective January 8, 2002. See L. 2001, c. 392, §2.

In 2018, more than five years after Walton's plea was entered, we held that the 2002 amendments to N.J.S.A. 2C:7-2(g) were not intended by the Legislature to be retroactive to those who were convicted or released prior to 2002. In re G.H., 455 N.J. Super. 515, 534 (App. Div. 2018). In 2019, the Supreme Court affirmed our decision. In re G.H., 240 N.J. 113 (2019).

However, the judge concluded that the performance of Walton's counsel must be evaluated in light of the law as it existed at the time Walton entered his plea. Because Walton was ineligible to apply for termination of the registration requirement in 2013, the judge concluded counsel's alleged failure to inform him of the effect of his guilty plea on his eligibility to apply for such relief could not constitute ineffective assistance of counsel.

Fourth, the judge concluded that the record established that Walton was fully aware of the effects his guilty plea would have on his registration requirements. Prior to entering his plea, Walton signed forms explaining his duty to register, the need to remain offense free for fifteen years from his release from prison in order to apply for termination of the registration requirement, and the disqualification from seeking termination for persons convicted of more than one sex offense or of aggravated sexual assault or sexual assault. Thus, the judge concluded, the factual predicate of Walton's claim was disproven.

9

Fifth, the judge concluded that Walton did not prove that had counsel informed him of his ineligibility to seek termination of the registration requirement, he would have rejected the plea, gone to trial, and been acquitted. Given the strength of the evidence that Walton gave police a letter he forged – which was the basis of Count One, not, as Walton claims, that he gave police a false address – the judge concluded Walton was unlikely to have been acquitted of Count One.[2]

Finally, the judge held that Walton did not make a prima facie case that his counsel's advice prejudiced him. Walton bases his argument on the presumption that an application to terminate his registration requirement would have been successful if he had been acquitted of both counts of the indictment. The judge noted, however, that to secure termination of the registration requirement a registrant must establish by clear and convincing evidence both an absence of an offense for fifteen years and that the registrant is "not likely to pose a threat to the safety of others." N.J.S.A. 2C:7-2(f). The judge concluded

---

[2] The judge did not address the likelihood that Walton would have been acquitted of Count Two, which was based on his failure to comply with the statutory requirement that he notify police of a change in residence "no less than [ten] days before he intends to first reside at his new address." N.J.S.A. 2C:7-2(d). The evidence established that Walton submitted notification of his new address after he changed residences.

A-3069-19

that, given Walton's offense history, which includes two sexual assault convictions, his confession to a third sexual assault for which he was charged, his acknowledgment of three other sexual assaults for which he was not charged, and his classification as a Tier III offender, Walton is unlikely to ever be released from the registration requirement. <u>See</u> <u>In re C.A.</u>, 146 N.J. 71, 86 (1996) (holding that the seriousness of past convictions is properly considered under a Megan's Law risk of re-offense assessment, as are non-conviction offenses "provided there is sufficient evidence that the offense occurred.").

With respect to Walton's remaining claims, the judge concluded that his claim that his counsel was ineffective for not investigating "a defense that relied upon the truthfulness of the content of the letter" was meritless. Walton was not charged with providing police with a false address. Count One of the indictment charged Walton with lying about the author of the letter he forged and submitted to police to verify his new address. Thus, the judge concluded, Walton's purported defense "was no defense at all."

Lastly, the judge concluded that Walton's allegation that he was pressured to accept the guilty plea was insufficient. Walton's argument is based on his claim that he accepted the plea because "he did not have confidence that his trial attorney was going to provide him with a defense." The judge held that a claim

based on a defendant's subjective confidence in his counsel's legal abilities is insufficient to constitute coercion. In addition, to the extent that Walton relied on his desire to offer the defense that the letter contained his accurate address, that defense, as explained above, was baseless. Defense counsel, the judge noted, has an ethical duty to advise a defendant not to pursue a baseless defense. See RPC 3.1. The judge also noted that Walton told the court at sentencing that his guilty plea was not the result of coercion.

In light of his conclusions, Judge Cronin held that Walton had not established an entitlement to an evidentiary hearing. A December 30, 2019 order dismissed Walton's PCR application.[3]

This appeal follows. Walton makes the following arguments.

> POINT ONE
>
> THE PCR COURT ERRED IN DENYING MR. WALTON'S PETITION FOR POST-CONVICTION RELIEF AS TESTIMONY IS NEEDED FROM PRIOR COUNSEL TO EXPLAIN WHY HE FAILED TO EXPLAIN TO HIS CLIENT THAT HE WOULD BE SUBJECT TO MEGAN'S LAW FOR AN ADDITIONAL FIFTEEN YEARS IF HE PLED

---

[3] Walton's petition also alleged a denial of his constitutional rights because the court: (1) failed to establish a factual basis for his plea; and (2) neglected to determine if his plea was knowingly and voluntarily entered. Because these claims could have been raised in a direct appeal, the trial court held that they were barred by Rule 3:22-4(a) from being raised in a PCR petition. Walton does not challenge this aspect of the trial court's decision on appeal.

A-3069-19

GUILTY AND WOULD BE UNABLE TO APPLY TO BE REMOVED FROM THE REGISTRATION REQUIREMENT.

A.    THE PCR COURT ALSO ERRED IN DENYING MR. WALTON'S PETITION FOR POST-CONVICTION RELIEF AS TESTIMONY IS NEEDED FROM PRIOR COUNSEL TO EXPLAIN WHY HE PRESSURED MR. WALTON TO PLEAD GUILTY.

POINT TWO

THE PCR COURT ERRED IN DENYING MR. WALTON'S PETITION FOR POST-CONVICTION RELIEF AS TESTIMONY IS NEEDED FROM PRIOR COUNSEL TO EXPLAIN WHY HE FAILED TO INVESTIGATE THE CONTENTS OF THE LETTER SUBMITTED TO POLICE REGARDING MR. WALTON'S RESIDENCY.

II.

Under Rule 3:22-2(a), a defendant is entitled to post-conviction relief if there was a "[s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey[.]"  "A petitioner must establish the right to such relief by a preponderance of the credible evidence."  State v. Preciose, 129 N.J. 451, 459 (1992).  "To sustain that burden, specific facts" which "would provide the court with an adequate basis on which to rest its decision" must be articulated. State v. Mitchell, 126 N.J. 565, 579 (1992).

13

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee criminal defendants the right to the effective assistance of counsel. State v. O'Neil, 219 N.J. 598, 610 (2014) (citing Strickland v. Washington, 466 U.S. 668, 686 (1984); State v. Fritz, 105 N.J. 42, 58 (1987)). To succeed on a claim of ineffective assistance of counsel, the defendant must meet the two-part test established by Strickland and adopted by our Supreme Court in Fritz. 466 U.S. at 687; 105 N.J. at 58.

Under Strickland, a defendant first must show that his or her attorney made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. Counsel's performance is deficient if it "[falls] below an objective standard of reasonableness." Id. at 688.

A defendant also must show that counsel's "deficient performance prejudiced the defense[,]" id. at 687, because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[,]" id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial. Ibid. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged

A-3069-19

deficiencies." Id. at 697; State v. Marshall, 148 N.J. 89, 261 (1997). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

We review a judge's decision to deny a PCR petition without an evidentiary hearing for abuse of discretion. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing Marshall, 148 at 157-58). A hearing is required only when: (1) a defendant establishes a prima facie case in support of PCR; (2) the court determines that there are disputed issues of material fact that cannot be resolved by review of the existing record; and (3) the court determines that an evidentiary hearing is required to resolve the claims asserted. State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)). "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" Id. at 355 (quoting R. 3:22-10(b)).

"[T]o establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied effective assistance of counsel." Ibid. (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)). A PCR petition must be "accompanied by an affidavit or certification by defendant,

or by others, setting forth with particularity[,]" State v. Jones, 219 N.J. 298, 312 (2014), "facts sufficient to demonstrate counsel's alleged substandard performance[,]" Porter, 216 N.J. at 355 (quoting Cummings, 321 N.J. Super. at 170); see also R. 3:22-10(c).

Having carefully considered the record in light of these legal principles, we affirm the December 30, 2019 order for the reasons stated in the thorough and well-reasoned written opinion of Judge Cronin. The judge exhaustively reviewed Walton's claims, correctly applied the law to the evidence in the record, and properly exercised his discretion when he dismissed Walton's PCR application without holding an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION